[No. 5963. Decided September 14, 1906.]

JOHN S. FERRELL et al., *Appellants,* v. J. K. LORD et al., *Respondents.*[1]

QUIETING TITLE—UNOCCUPIED LAND—REMEDY. An action to quiet title cannot be dismissed on the theory that the land was occupied and ejectment the proper remedy, where the evidence established that the land was unoccupied when the suit was commenced.

ADVERSE POSSESSION—COTENANT—ACTION TO QUIET TITLE—LIMITATION. Where the mother and wife died possessed of an interest in community real property, the husband and father and his successors in interest are not prevented from claiming title against the child-

[1]Reported in 86 Pac. 1060.

ren of the deceased mother, on the theory that he was a tenant in common and had never ousted the children, where it appears that none of the children had been under disability or had been in possession of the land for more than ten years prior to the commencement of their action to quiet title.

QUIETING TITLE—LACHES—LIMITATIONS—EQUITY. In an action to quiet title, laches or long acquiescence in the assertion of rights, for a time less than that prescribed by the statute of limitations, may be held a bar to the action, by virtue of the inherent power of a court of equity to discourage ancient demands.

EQUITY—LACHES—STALE DEMANDS. A suit by children to quiet title to land, claimed by descent from their mother, which was commenced fourteen years after her death, thirteen years after the execution of a mortgage by their father, who claimed the full title, and seven years after the foreclosure of the mortgage, during which time plaintiffs asserted no claim and paid no taxes, all having knowledge of adverse claims and acts of ownership, is properly dismissed as a stale demand, and for laches and unexcusable delay.

Appeal from a judgment of the superior court for Yakima county, Honorable Austin Mires, judge *pro tempore,* entered February 14, 1905, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*E. B. Preble,* for appellants.

*Ira P. Englehart,* for respondents.

CROW, J.—The plaintiffs, John S. Ferrell, George H. Ferrell, Oliver R. Ferrell, Louise E. Adams, Elsie St. John, Frances L. Ferrell, and Kate Gibbons, commenced this action against J. K. Lord and others, defendants, to quiet their title to an undivided half interest in 168.58 acres of land in Yakima county, Washington. The following facts found by the trial court are supported by the preponderance of the evidence: That on August 18, 1888, the United States issued to one John Ferrell a patent for said land; that he and one Julia A. Ferrell were then husband and wife; and that said Julia A. Ferrell died intestate in the month of July, 1899, and left surviving her, her said

husband and the plaintiffs herein, children of herself and said John Ferrell; that at the date of her death, said plaintiffs were all of the age of majority except the plaintiff John S. Ferrell, who attained the age of majority on May 1, 1891; that none of the plaintiffs have, at any time since her death, been under any disability except that the said John S. Ferrell was a minor for a little less than two years; that said real estate was the community property of said John Ferrell and Julia A. Ferrell; that no administration was ever had upon the estate of said Julia A. Ferrell, deceased; that at the time of the death of said Julia A. Ferrell, she and her husband lived on said land as their homestead; that none of said plaintiffs have ever lived upon or occupied said land since her decease; that on June 30, 1890, said John Ferrell, claiming to be the owner of said land, made, executed and delivered to Crippen-Lawrence Investment Company a certain mortgage thereon, to secure the payment of his note of even date, for the sum of $1,200, falling due June 30, 1895; that the consideration for said note was a loan made to said John Ferrell; that in said mortgage he covenanted that he was seized of all the title to said land and each and every part thereof, free and clear from incumbrances; that at said time he made a written application for said loan, in which he represented there were no adverse claims against said premises; that said mortgage was executed and promptly recorded in the manner provided by law, and was, for a valuable consideration, assigned before maturity to defendant, J. K. Lord, who at the time he purchased the same had no knowledge or information of any kind whatsoever of any adverse claims against said land, or that the plaintiffs or any of them claimed any interest therein; that thereafter, default being made in the payment of said note and mortgage, said J. K. Lord proceeded to foreclose the same in the superior court of Yakima county, Washington; that said John Ferrell, the mortgagor, was made

defendant in said action, but that none of the plaintiffs herein were parties thereto; that a decree of foreclosure was entered, and on June 13, 1896, said land was sold under said foreclosure decree to said J. K. Lord, who bid the full amount of his judgment therefor; that said sale was confirmed; that at the expiration of the period of redemption, a sheriff's deed was executed and delivered to said Lord and immediately recorded; that thereafter said Lord, by his agents, during the year 1897 or 1898, took possession; that said land is arid and will not raise crops without irrigation, for which there is no water; that the agent of defendant Lord, after taking possession, has been assuming to control and manage said land; that no one of said plaintiffs has ever been in possession of said land, or paid or offered to pay any taxes thereon; that none of them ever claimed any right, title or interest therein prior to May 29, 1903, when this action was commenced; that the plaintiffs George H. Ferrell, Oliver R. Ferrell and John S. Ferrell, who are the only plaintiffs who testified in this action, severally testified that they knew their father had given said mortgage at or about the time of its execution; that they knew said mortgage was being or had been foreclosed, and that they had never made any claim of right, title or interest in or to said property, or any part thereof, prior to the commencement of this action; that the said John Ferrell, father of the plaintiffs, ever since the death of his wife and until the foreclosure proceedings, claimed to own the entire title to said land and every part thereof, and was in possession and control of the same; that after said mortgage foreclosure, he turned said property over to the agent of the defendant Lord, who through his agent has since been in possession, claiming to be the owner thereof under said foreclosure proceedings; that the possession of said John Ferrell and said J. K. Lord, as his successor, in and to said premises had been open, notorious, peaceable, and continuous, under a claim of right ever since July, 1889;

that said John Ferrell, after the death of his wife, caused improvements to be made on said premises, which at the time of the trial were of the value of $250; that said premises would not rent for more than $20 per annum; that no demand for rents has ever been made by any of the plaintiffs prior to the commencement of this action; that said John Ferrell paid all taxes from July, 1889, until 1892, inclusive, when he ceased making payment; that the defendant Lord thereafter was compelled to pay, and did pay, in protection of his mortgage and title, all taxes on said land from 1893 to 1903, inclusive; that the plaintiffs have never tendered any part of said taxes to said John Ferrell or to said J. K. Lord; that no one of the plaintiffs has been laboring under any legal disability since the death of said Julia A. Ferrell, except as above stated; that said plaintiffs have not, at any time since the death of their mother, commenced any proceedings whatever setting up any claim to said property or any part thereof, except this action, which was commenced on May 29, 1903; that said plaintiffs and each of them during all of said times have stood by and permitted said John Ferrell to openly and notoriously claim to be the owner of said property, and have never notified said John Ferrell, or the defendant Lord or his predecessors in ownership of said mortgage, that they claimed any interest in said property; that they have permitted said Lord and his predecessors in interest in the ownership of said mortgage to pay taxes on said premises, to foreclose said mortgage, and to sell said property without notifying him or any one that they claimed any interest therein; and that all of the defendants in this action except the defendant J. K. Lord have disclaimed any interest in or to said land.

In addition to the above, the trial court also made finding of fact number 11, reading as follows:

"That the premises were not in the possession of said plaintiffs or either of them, at the time of the commencement of

this action; that said premises were not vacant or unoccupied; that said premises were at the time of the commencement of this action in the possession of the defendant J. K. Lord."

Upon these findings a decree was entered, dismissing the action, and the plaintiffs have appealed.

The appellants have excepted to the findings made by the trial court, and also to its refusal to make findings proposed by them. We have carefully examined the evidence and conclude that its preponderance sustains the findings made, with the one exception of finding number 11, above quoted. We find that although the land had been previously occupied by the respondent or his agent, it was not so occupied at the date of the commencement of this action, the evidence showing that it was then vacant and unoccupied. This is an equitable action to quiet title, and not one in ejectment. Hence, while we think the judgment of the trial court should be affirmed for reasons hereinafter stated, nevertheless, the respondents' contention that the action should be dismissed on the theory that the land was occupied and that the appellants should have instituted an action in ejectment, cannot be sustained. *Povah v. Lee,* 29 Wash. 108, 69 Pac. 639.

Appellants insist most vigorously that the evidence does not show the respondent Lord and John Ferrell, his predecessor in title, to have been in adverse possession for more than ten years; also, that it does not show said Lord and his predecessor Ferrell to have been in possession for a period of seven years under color of title in good faith, with payment of taxes. They claim that John Ferrell, their father, was their tenant in common; that his possession was their possession; that he had never ousted them; that his possession was not adverse as to them, and cannot aid the respondent in acquiring title either under the ten-year statute, Bal. Code § 4797 (P. C. § 280), or under the seven-year color-of-title statute, Bal. Code, § 5501 *et seq.* (P. C. § 1158); that the respondent could not have possibly maintained any

adverse possession prior to June 13, 1897; that this action was commenced on May 29, 1903, within seven years thereafter; and that the evidence does not show payment of taxes by respondent for seven consecutive years. Without going into a detailed discussion of the evidence, we think it sustains the findings of the trial court on all of these issues, and that the final judgment should therefore be affirmed.

Were it to be conceded, however, that the respondent has failed to show any ouster of appellants by John Ferrell, their tenant in common, or to show adverse possession in himself and his predecessor John Ferrell for ten years, or adverse possession in himself and John Ferrell under color of title in good faith with payment of taxes for seven years, still we agree with the trial court in holding that the appellants should not, by reason of their inexcusable laches and delay, be permitted to recover any equitable relief herein. Where a case is of purely equitable cognizance, in the application of the doctrine of laches courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, ancient demands, and refuse to interfere where there has been gross laches in prosecuting the claim or long acquiescence in the assertion of adverse rights. In such cases the statute of limitations does not necessarily govern the court in the application of the doctrine of laches. 9 Ballard, Law of Real Property, § 757; *Gay v. Havermale,* 30 Wash. 622, 71 Pac. 190; *Boyer v. East,* 161 N. Y. 580, 56 N. E. 114, 76 Am. St. 290; *Galliher v. Cadwell,* 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; *Penn Mut. Ins. Co. v. Austin,* 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626.

There is no inflexible rule controlling the application of the defense of laches. The facts and circumstances of each case must govern courts of equity in permitting said defense to be made. The authorities show that, while lapse of time is one of the elements to be considered in applying this equi-

table defense to stale claims, it is only one, and that it is not necessarily the controlling or most important one. Regard must be had to all of the facts and surrounding circumstances, and if, when carefully considered, they do not appeal to the conscience of the chancellor, on behalf of a claimant, the defense of laches should be allowed. In *Hayward v. National Bank,* 96 U. S. 611, 617, 24 L. Ed. 855, Mr. Justice Harlan said:

"But the appellant is equally concluded by the lapse of time during which that transaction has been allowed to stand, without any effort upon his part to impeach it. It must now be regarded as unimpeachable. Courts of equity often treat a lapse of time, less than that prescribed by the statute of limitations, as a presumptive bar, on the ground 'of discouraging stale claims, or gross laches, or unexplained acquiescence in the assertion of an adverse right.' 2 Story, Eq. Jur., sect. 1520. In *Smith v. Clay* (Amb. 645), Lord Camden said: 'A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, when the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. When these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced.' "

In *Townsend v. Vanderwerker,* 160 U. S. 171, 186, 16 Sup. Ct. 258, 40 L. Ed. 383, Mr. Justice Brown said:

"The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did."

A very able discussion of the equitable defense of laches may be found in the case of *Patterson v. Hewitt,* 11 N. M. 1, 66 Pac. 552, 55 L. R. A. 658, afterwards affirmed in

195 U. S. 309, 25 Sup. Ct. 35, where Mr. Justice Brown of the supreme court of the United States said:

"The defense of laches, which prompted the dismissal of the bill in this case, has so often been made the subject of discussion in this court that a citation of cases is quite unnecessary. Some degree of diligence in bringing suit is required under all systems of jurisprudence. In actions at law, the question of diligence is determined by the words of the statute. If an action be brought the day before the statutory time expires, it will be sustained; if a day after, it will be defeated. In suits in equity the question is determined by the circumstances of each particular case. The statute of limitations consorts with the rigid principles of the common law, but is ill adapted to the flexible remedies of a court of equity. The statute frequently works great practical injustice—the doctrine of laches, never. True, lapse of time is one of the chief ingredients, but there are others of almost equal importance. Change in the value of the property between the time the cause of action arose and the time the bill was filed; complainant's knowledge or ignorance of the facts constituting the cause of action, as well as his diligence in availing himself of the means of knowledge within his control, are all material to be considered upon the question whether the suit was brought without unreasonable delay."

Considering the facts and circumstances of this case, and even assuming, for the sake of the present argument, that the respondent and his predecessor Ferrell have not been in continuous, adverse possession for either ten years or seven years; the evidence shows that prior to the commencement of this action nearly fourteen years had elapsed since the death of Julia A. Ferrell, thirteen years since the execution of said mortgage, and almost seven years since the foreclosure sale to the respondent Lord; that during the earlier portion of said time John Ferrell had exercised acts of ownership over said property; that he had occupied and improved the same; that he and the respondent Lord had paid all taxes assessed thereon; that no one of the appellants ever made any claim of title to said real estate; that they had never paid or offered

to pay taxes; that they knew their father John Ferrell claimed to own the property in his own right; that they knew he mortgaged the land intending thereby to create a lien on the entire estate; that the respondent purchased said mortgage in good faith and for a valuable consideration, believing it covered the entire title; that he afterwards foreclosed the same and, at the sheriff's sale, bid the entire amount of his judgment, thus satisfying his entire claim against his debtor John Ferrell; that he promptly took possession, and that all these facts were known to the appellants, who although under no disability, failed to assert any rights whatsoever. Appellants have made no effort, either by the allegations of their complaint or by evidence, to explain or in any way account for this inactivity and neglect. They simply rely upon their alleged title, which they claim to have inherited from their deceased mother some fourteen years prior to the commencement of this action. Do these facts and circumstances commend the appellants to a court of equity? Should they be allowed at this late date to assert their claims against the respondent Lord, who has in good faith paid his money for said mortgage, satisfied his foreclosure judgment, and acquired what he believed to be the full fee simple title to said real estate? The appellants have been guilty of such inexcusable neglect and delay that a court of equity should refuse to aid them in the prosecution of their stale demands. They have slept too long upon their rights. They have failed to act in good faith or with reasonable diligence. The equitable defense of laches has been clearly shown, and was properly sustained by the trial court.

The judgment is affirmed.

Mount, C. J., Dunbar, Hadley, and Fullerton, JJ., concur.