[No. 8745. Department One. June 9, 1910.]

JOHN M. BOYLE *et al.*, *Appellants*, v. MARY OLESON *et al.*,
*Respondents.*[1]

EQUITY—LACHES—ESTOPPEL. Where a divorced wife acquiesced
in a property settlement releasing her husband of all claims and
demands, and in a decree of divorce finding that there was no
"common property," for a period of seventeen years and died with-
out making any claim to other property acquired by the husband for
a small sum prior to the decree and settlement, although she knew
three years before her death of the time of the acquisition of such
other property, she and those claiming under her thirty years after
the settlement are estopped by laches from claiming that such other
property was the common property of the husband and wife; he
having improved it and claimed it as his separate estate.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered January 18, 1910, upon find-
ings in favor of the defendants, in decreeing the final settle-
ment and distribution of a decedent's estate, after a hearing
on the merits before the court. Reversed.

*Boyle, Warburton & Brockway, Lund & Lund*, and
*F. Campbell*, for appellants.

*Frank D. Nash* and *John Leo*, for respondents.

GOSE, J.—This proceeding was heard in the superior
court, sitting in probate, at the time of the final settlement
of the account and the distribution of the estate of John P.
Kirby, deceased, upon the petition of four of the daughters
of the deceased, one of whom, Anna R. Kile, died pending the
proceeding. The issue presented for determination is, whether
certain property situated in the city of Tacoma was the
separate property of the deceased or the common property
of the deceased and his widow, Ann Kirby, from whom he was
divorced in 1878, and who died in 1896. All the parties stip-

[1]Reported in 109 Pac. 203.

ulated that this question should be determined by the trial
court, and no jurisdictional question is now raised. Certain
property was adjudged to be common property, and a de-
cree was entered accordingly. The devisees and legatees
under the will of John P. Kirby have appealed.

Ann Kirby died intestate in San Francisco, California, in
1896, having before her death divided all the property owned
by her, or to which she claimed title, between her children.
John P. Kirby died testate at the same place in 1905. At
the time of his death he was a resident of Pierce county, in
this state, and his will was regularly proven and admitted to
probate there, and his estate has proceeded to final settlement
and distribution. In his will he failed to name two of his
grandchildren, but their rights are conceded.

The appellants contend that the findings of the court are
not in harmony with the conclusions of law; and that the
findings and the evidence require an adjudication that all
the property in this state was the separate property of the
testator. We think this contention must be upheld. The
facts found which are essential to a consideration of this
question are, that John P. Kirby and Ann Kirby intermarried
in the state of Massachusetts in 1855; that they later came
to San Francisco; that in 1870 John P. Kirby came to this
territory and acquired a preemption claim at La Conner; that
on September 6, 1878, a decree of divorce was entered in the
third judicial district at the suit of John P. Kirby, whereby
the marriage bonds between him and Ann Kirby were dis-
solved; that the referee found "that there is no common or
copartnership property of plaintiff and defendant"; that in
1879 Ann Kirby filed a petition in the divorce proceeding to
set aside the decree; that pending the petition she and John
P. Kirby entered into an agreement of settlement in the
language following:

"Memorandum of an Agreement, made and entered into
at the city and county of San Francisco, state of California,
this 16th day of August, 1879, between John P. Kirby, of

La Conner, Whatcom county, Washington Territory, party of the first part, and Ann M. Kirby, of the city and county of San Francisco aforesaid, party of the second part;

"Witnesseth, That whereas the party of the first part on or about the 30th day of June, 1878, obtained a decree of divorce from the party of the second part in the district court of said territory, for the Seattle district, and

"Whereas, The party of the second part has since taken proceedings in said court to set aside said decree and to obtain a decree of said court awarding certain lands at La Conner aforesaid to the party of the second part, and

"Whereas, It has been agreed between the parties hereto that said proceedings on the part of the party of the second part shall be discontinued and all matters in difference between them settled;

"Now in consideration of the premises the party of the first part hereby agrees that he will forthwith execute to the party of the second part a deed of conveyance of one-half of the preemption claim of the party of the first part situate at La Conner aforesaid, and consisting of 86 acres, more or less, of land, and being the north half of said preemption claim;

"And in consideration of said conveyance of land the party of the second part hereby agrees to discontinue forthwith all proceedings to vacate or set aside said decree of divorce, and all other proceedings either at law or in equity against the party of the first part, and also accept the said decree as a valid and binding divorce between the parties hereto.

"And it is further hereby agreed that each of the parties hereto shall bear their own costs and expenses in said hereinbefore mentioned proceedings in the district court;

"And it is further hereby agreed, and these presents witness, that each of the parties hereto have released the other from all claims and demands whatsoever to the date hereof";

that the divorce remained in full force and effect; that pursuant to the agreement, John P. Kirby conveyed to Ann Kirby one-half of the preemption claim, consisting of about eighty-seven acres, which she received and later sold, appropriating the proceeds to her own use; that she died intestate in San Francisco in 1896, dividing her California property between her children before her death, but not mentioning or

disposing of any property in this state; that she did not
remarry; that in 1877 John P. Kirby purchased lots 25 and
26 in block 1506 in the city of Tacoma, paying therefor $250,
and recording the deed in October, 1878, after the entry of
the decree of divorce and before the settlement; that the lots
with the improvements are now of the value of $70,000; that
neither Ann Kirby nor the petitioners have ever paid, or
offered to pay, any taxes or assessments against the prop-
erty; that John P. Kirby erected buildings upon the prop-
erty of the value of $10,000, and paid all taxes and assess-
ments thereon; that a short time after the death of John P.
Kirby the deed to the lots came into the possession of the peti-
tioners, and they thereafter "upon investigation being made,
first learned that said property was acquired prior to the
date of the entry of the decree of divorce"; that Ann Kirby
never resided in this state.

From the facts stated it will be observed that, after 1870,
Ann Kirby was a resident of the state of California, and
John P. Kirby was a resident of this territory and state;
that the property which is asserted to be common property
was acquired in 1877, before the date of the decree of divorce;
that the deed by which it was conveyed was filed for record in
1878, after the entry of the decree and before the articles of
settlement were executed; that the property was purchased
for $250, and by the improvements placed upon it by the hus-
band and the growth of the city, it had increased in value to
$70,000, at the time of the trial; that from the settlement in
1879, whereby each party released the other "from all claims
and demands whatsoever," to the death of the wife in 1896,
a period of seventeen years, she acquiesced in the settlement
and the divorce decree based upon a finding that there was no
"common property," the term then employed by the statute
for what is now designated community property, and that she
accepted "the said decree as a valid and binding divorce." The
evidence shows conclusively that she thereafter conveyed prop-
erty as the widow of John P. Kirby, and that in 1893, three

years before her death, both she and the petitioners were advised that the property in controversy was purchased by the husband before the entry of the divorce decree; that the petitioners remained inactive until the commencement of this proceeding in 1909, thirty years after the settlement, and that John P. Kirby at all times exercised and asserted absolute ownership over the property.

Without considering the effect of the finding in the divorce proceeding that there was no common property, based upon a complaint containing that averment, and without considering the statute of limitations, we think that the petitioners are estopped by the laches and acquiescence of their mother to maintain this proceeding. The finding of the trial court that the respondents first learned that the property was acquired before the entry of the decree of divorce, after the death of John P. Kirby, as we have stated, is not supported by the evidence. As early as 1890 they knew that the father was claiming and asserting title to the property. In 1893 the mother visited the respondents at Tacoma, when some of them were living upon the property as tenants of John P. Kirby, and she and the respondents were advised then, or a short time thereafter, that the property was purchased before the decree was entered. If the mother was content to accept the settlement as final both before and after she had notice of the time the property was acquired, the respondents, who can only claim through her, cannot be heard after a lapse of thirty years, and after the death of all the parties to the transaction, to question its conclusiveness. Courts of equitable cognizance have ever frowned upon stale demands, and refused relief where rights have been asserted by one party and acquiesced in by the other for such a length of time and under such circumstances as to make it inequitable to permit the apparent and asserted right to be disturbed. It follows from what we have said that the widow was estopped at the time of her death by her laches and acquiescence, and that

those in privity with her occupy the same position. *Ferrell v. Lord,* 43 Wash. 667, 86 Pac. 1060.

We conclude, therefore, that all the property in controversy was the separate property of the deceased, and that it should be distributed according to the will, except as to the grandchildren not named in the will, whose rights are admitted and were protected in the decree. The decree is reversed, with directions to distribute the property in conformity with this opinion.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.