[No. 15464.    Department Two.    July 20, 1920.]

THE STATE OF WASHINGTON, *on the Relation of W. A. Lincoln et al., Plaintiff,* v. THE SUPERIOR COURT FOR OKANOGAN COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN (30)—IRRIGATION DITCHES—PROPERTY DEVOTED TO PUBLIC USE—RIGHTS OF TENANTS IN COMMON IN DITCH. Condemnation by one of the joint owners of a ditch for the purpose of carrying additional water merely adds an additional servitude entitling the co-owners to compensation, and does not deprive them of the right to the beneficial use of waters, declared by Laws of 1917, p. 448, § 4, to be a public use.

SAME (7, 21)—IRRIGATION—USE OF DITCH—RIGHT TO CONDEMN—STATUTES—CONSTRUCTION. Laws of 1917, p. 448, § 4, declaring the beneficial use of water to be a public use and granting the right to enlarge existing structures employed for public use, by necessary implication grants the right to use them when so enlarged.

SAME (39)—IRRIGATION DITCHES — FEASIBILITY OF ROUTE — EVIDENCE—SUFFICIENCY. Under Rem. Code, § 6364, preventing the condemnation of improved or occupied land for a new irrigation ditch without the owner's consent where an existing ditch will carry the water, the ditch is the only property that can be condemned for carrying additional water, where that was feasible and practicable.

APPEAL (398)—REVIEW—PLEADING—AMENDMENTS. A defect in a complaint in asking condemnation for only part of a ditch will be considered amended on appeal to make it as broad as the evidence showing a necessity for condemning the entire ditch.

CONSTITUTIONAL LAW (70, 71)—POWER OF STATE IN GENERAL—SUPERIORITY OVER PRIVATE CONTRACT. Laws of 1917, p. 448, § 4, permitting the condemnation of a ditch by one of several tenants in

[1] Reported in 191 Pac. 805.

common, does not violate the obligation of the contract between the cotenants; since the eminent domain statutes are paramount and superior to contract rights.

EMINENT DOMAIN (39)—NECESSITY—EVIDENCE—SUFFICIENCY.  A sufficient necessity for condemnation for irrigation is shown by evidence that a water supply will make good a deficiency for the irrigation of certain lands, and also bring under cultivation other arid and unproductive land.

Certiorari to review an order of the superior court for Okanogan county, Neal, J., entered July 22, 1919, adjudging a public use and necessity in condemnation proceedings, after a trial to the court. Affirmed.

*Wm. O'Connor,* for relators.

*P. D. Smith* and *W. C. Brown,* for respondents.

Fullerton, J.—The petitioners and the respondent Little-Wetsel Company own abutting lands situated in Okanogan county. The lands are in an arid region and require irrigation to make them productive. The sources from which water is obtained for irrigating the lands are above the lands of the petitioners. The lands of the respondent were in part formerly owned by one Hess, and he, together with the petitioners, appropriated the waters of a creek known as Wolf creek, and constructed a ditch from the creek to their lands. The ditch for the first one thousand feet passes over what was then government land, the title to which was afterwards acquired by one Allison, and from thence it passes over the petitioners' lands to the land now owned by the respondent. Hess, on the one part, and the petitioners, on the other, owned the land and water appropriated as tenants in common in equal moieties. The respondent, at the time it acquired the land of Hess, acquired also his interest in the ditch and his interest in the appropriated waters. The ditch seems to have become known locally as, and is called in the

record, the Hess-Lincoln ditch. As originally con-
structed, and as now operated, the ditch has a capacity
of some sixteen cubic feet of water per second of time.

Wolf creek, while furnishing water sufficient to sup-
ply the carrying capacity of the ditch in the early part
of the irrigating season, diminishes in flow rapidly
thereafter, and for the later part of the season the
water from that source is insufficient to supply the
needs of the parties. To augment its own supply the
defendant constructed a ditch from the Methow river
to the head of the Hess-Lincoln ditch, and sought to
convey water from that source through its constructed
ditch and through the Hess-Lincoln ditch to its lands.
The petitioners objected to its doing so, and the con-
troversy engendered thereby gave rise to the case of
*Little-Wetsel Co. v. Lincoln,* 101 Wash. 435, 172 Pac.
746. We there held that the respondent had no right
to so convey the water without the consent of the Lin-
colns, since it was to subject their interests in the ditch
and their lands to an additional servitude not war-
ranted by the agreement under which the ditch was
constructed.

After the decision of this court in that case, the
defendant instituted an action in the superior court of
Okanogan county against the petitioners to condemn
the right to carry through the Hess-Lincoln ditch the
additional water mentioned. As a part of the relief
sought they asked to have the ditch widened through
the lands of the petitioners by taking a strip of land
one foot in width from the upper side of the ditch, so
as to give the ditch a carrying capacity of nineteen
feet of water per second of time, instead of sixteen
feet, its present capacity. At the trial of the cause,
the court entered an order of necessity, and this pro-

ceeding was brought by the petitioners to review the order.

The contentions of the petitioners can be divided into two principal propositions, namely, first, that the property sought to be condemned is not subject to condemnation; and second, that, conceding it to be so subject, the evidence is insufficient to justify the order.

In support of the first of these propositions, the petitioners call attention to the declaration of the legislature to the effect that the beneficial use of water is a public use (Laws of 1917, ch. 117, p. 448, § 4), and argue therefrom that the right in the ditch sought to be condemned, since it is in aid of this use, is also devoted to a public use, and that to permit the defendant to convey through the ditch water from an independent source for its own private benefit is to take property from them and transfer it to the defendant, contrary to the rule that property devoted to a public use by one person cannot be taken from him without his consent and given to another to be devoted to a like or similar use.

But, without quarreling with the legal rule as stated, we think the premise assumed as the basis for invoking the rule has no foundation in the facts shown. The order of necessity as entered does not deprive the petitioner of any beneficial use they are making of the waters of Wolf creek, nor can we conceive that it deprives them of the means by which they make use of such waters. The ditch as at present constructed has, as we have said, a carrying capacity of sixteen cubic feet of water per second of time. The petitioners' right therein, since they are the owners of a half interest in the ditch, is to carry and to apply to their own use water up to one-half of this carrying capacity. The order of the court preserves this right in them. It but

gives to the respondent the right to enlarge the ditch and the right to carry therein for its own benefit such additional water as the increased capacity of the ditch will enable it to carry. This does no more than add to the ditch and to the lands of the petitioners an additional servitude for which they are entitled to compensation, but manifestly it does not deprive them of any property which they are now devoting to a beneficial use. The argument advanced in this connection, to the effect that the petitioners are seized of the whole as well as the part of the common property devoted to the beneficial use of this water and that any interference therewith is of necessity a taking of such property, is not tenable. At common law, for the purpose of tenure and the right of survivorship, joint tenants of property were said to be seized by the moiety and by the whole, but we have no such tenancies in this state. Not only is a tenure by joint tenancy against the spirit of our institutions, but it has been expressly abolished by statute, and now all common owners of property hold as tenants in common. In such a tenancy, even at the common law, the tenants hold by distinct moieties and their titles are not joint but several. Any added burden to the common property which leaves its use intact cannot, therefore, in any just sense, be said to be a taking of the property within the rule for which the petitioners contend.

A second reason urged for denying the power of condemnation is that there is no statutory authority for it. But we think there is. The section of the laws above cited provides:

"The beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire property or rights now or hereafter existing when found necessary for the

storage of water for, or the application of water to, any beneficial use, including the right to enlarge existing structures employed for the public purposes mentioned. . . . Such property or rights shall be acquired in the manner provided by law for the taking of private property for public use by private corporations.'' Laws of 1917, p. 448, § 4.

Concerning the applicability of the statute, counsel say:

''This portion of the water code gives the right to enlarge only, and the court, I do not believe, is justified in reading something else into the statute. The rule of strict construction applies when dealing with a statute covering eminent domain proceedings, and I do not believe I need to state authorities to sustain me in this contention. This being true, that said statute should be strictly construed, the only proceeding the Little-Wetsel Company could maintain, if any at all, would be a proceeding in eminent domain for enlarging the ditch, and that is all the court could legally grant to the Little-Wetsel Company under any view of the case. To go further and entertain a proceeding to condemn the rights in a ditch already constructed and devoted to a public use for a like public use is clearly error.''

But we think it clear that this is to place an unwarranted construction on the statute. The section is a part of the act known as the water code, one of the main objects of which was to provide means by which water could be impounded and carried to arid lands for irrigating purposes. To hold, therefore, that the statute is a grant of the right to enlarge existing structures constructed for such purposes, but is not a grant of the right to use them when so enlarged, would, in our opinion, be a perversion of the statute. Plainly, if the right is not expressly granted, it is granted by necessary implication.

Again, it is said that no order of condemnation could be entered without a showing that no feasible route exists for the construction of an independent ditch for carrying the water to the respondents' land, and that the evidence is to the contrary. The showing was that the water could be conveyed by the construction of a new ditch across the petitioners' land, but that no other feasible route existed therefor. The objection is therefore met by the statute. Section 6364 of Rem. Code provides:

"No tract or parcel of improved or occupied land in this state shall, without the written consent of the owner thereof, be subjected to the burden of two or more irrigating ditches constructed for the purpose of conveying water through said property to lands adjoining or beyond the same, when the same object can feasibly and practicably be attained by uniting and conveying all the water necessary to be conveyed through such property in one ditch."

While the petitioners contend to the contrary, the evidence, as we view it, shows that it is both feasible and practical to unite and convey the waters as the statute contemplates. The contrary view is based on the opinion of certain of the witnesses to the effect that the excess volume of water, because of the somewhat extreme fall of the ditch, will cause the ditch to wash at one place and fill at another, and thus eventually destroy it for use. But, aside from the fact that there were opinions, seemingly of equal weight, to the contrary, it is in evidence without contradiction that the remedy for the condition assumed, should it occur, presented no engineering difficulty, but that it could, in fact, be remedied by the insertion of very simple contrivances. It being feasible and practical to convey the additional water through the ditch, the respondent has, under the statute, no choice of means for conveying

the additional water; it must convey it through the existing ditch, if it is permitted to convey it at all.

It is further contended that the order of necessity entered is erroneous because broader than the complaint upon which it is founded; the more precise contention being that the complaint asks a condemnation only of that part of the ditch extending through the petitioners' lands, whereas the order covers the entire ditch. But the objection is not fatal. Aside from the fact that we think the complaint sufficient in the respect mentioned, when the question was suggested in the court below, that court held the complaint sufficient, and the cause was tried on that theory, the evidence going to show a necessity for condemning the petitioners' interests in the entire ditch. The defect, if defect there is, is capable of being cured by amendment. In such a case we are required by statute (Rem. Code, § 1752), to "consider all amendments which could have been made as made," and must consider the complaint as broad as the evidence, even though we should find it otherwise.

The final objection on this branch of the case is that the statute permitting the enlargement of existing structures constructed for impounding and conveying water for irrigating purposes (Laws of 1917, ch. 117, § 4) is void, when applied to the particular instance, because it violates the obligation of a contract. It appears that, when the petitioners and Hess appropriated waters for irrigating their lands, they entered into a written contract by which they defined their respective rights in the water appropriated and their respective interests in the ditch by which the appropriated waters were to be conveyed to their lands, and it is argued that this contract is violated by the statute because it permits the acquisition by one of the parties

to the contract of greater rights in the ditch than the contract confers upon him. But we cannot conclude that this is the meaning of the constitutional inhibition invoked. Rights in property are not exempt from the statutes of eminent domain merely because they are acquired by contract, nor is common property exempt merely because the owners entered into a contract defining their interests in the property when it was acquired. Private property of one person is allowed to be taken by another for use in irrigation either because the taking is for a public use, as declared by the statute cited, or because it is a right granted by the constitution of the state. *State ex rel. Galbraith v. Superior Court*, 59 Wash. 621, 110 Pac. 429, 140 Am. St. 893. In either event it is a right paramount and superior to any right acquired by private contract, and a taking thereunder by one of the parties to the contract cannot be said to be a violation of the provision of the constitution referred to, unless it might be so said in an instance where the contract expressly provides against the acquisition by the one party of rights not enuring to the benefit of the other party. But this question it is not necessary to decide, as it is not here presented.

The second of the principal propositions urged requires no extended discussion. To our minds, the evidence amply shows that the respondent has not, apart from the supply it here seeks to make available, sufficient water to irrigate the lands it now has under cultivation, and shows further that, by means of this supply, it can not only make good this deficiency, but can by means thereof bring under cultivation other of its arable lands which must otherwise remain arid and unproductive. There is thus a necessity for the taking of the property sought to be taken within the meaning

of that term as used in the statute, and the trial court did. not err in so holding.

The order is affirmed.

Holcomb, C. J., Mount, Tolman, and Bridges, JJ., concur.