[No. 19310. Department Two. July 27, 1925.]

BERNHARDT MEYER et al., Appellants, v. ROY E. TRANTUM et al., Respondents.[1]

EQUITY (41)—LACHES—STALE DEMAND—LAPSE OF TIME. The assertion of an interest in the community real estate as heirs of their father is a stale demand and barred by laches, where it was not made until twenty-six years after the oldest, and eight years after the youngest, child became of age, and after the widow had used and claimed it as her own for over thirty years.

APPEAL (389)—REVIEW—PLEADING—AMENDMENTS. The pleadings will, on appeal, be deemed amended to conform to proof of laches, introduced without objection, barring a defense in an action to quiet title.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered September 29, 1924, in favor of the defendants, in an action to quiet title, tried to the court. Reversed.

Samuel P. Weaver (Ross C. Fisher, of counsel), for appellants.

Wm. O. Lewis and W. O. Miller, for respondents.

MACKINTOSH, J.—In April, 1898, E. L. Trantum died and there survived him a widow and five children; two of these, a son three years old and a daughter one year old, were the children of himself and his surviving wife (now Anna B. Allen); the other three were children of a deceased wife. In May, 1898, the widow,

[1]Reported in 237 Pac. 1006.

Anna B. Trantum, was appointed administratrix of the estate, which included a quarter-section of land situated in Adams county, which in November, 1898, was set apart to the widow for the support and maintenance of herself and the minor children. It may be taken that this property was not properly set aside as a homestead. Nothing else was done in the probate proceeding until 1924.

In March, 1908, Mrs. Trantum, as owner, leased the quarter-section until the first of January, 1910. In December, 1913, she described herself as the sole owner of the land and mortgaged it as such. In September, 1916, she again mortgaged the land to another mortgagee, covenanting again that she was the fee simple owner. In September, 1917, as sole owner, she leased the quarter-section. In January, 1921, she executed a right of way deed to a portion of it. In March, 1921, joining with her husband, Edward L. Allen, she executed a mortgage to a bank for a loan, and in May, 1922, this bank secured a judgment and the real estate was sold and bought by the bank, to which, in August, 1923, the sheriff of Adams county executed a deed, and from which it thereafter passed to the appellants. This action was begun to quiet title. In their answer the respondents, as children of E. L. Trantum, deceased, claim a two-thirds interest in this land as their father's separate property. This claim was confirmed by the trial court.

After the death of their father, none of the three children of his first marriage ever lived upon the land, and of the two children of the second marriage, the older, the boy, did not live there after 1916, when he became of age. He had actual knowledge of the fact that his mother had leased the property, because in 1917 he took an assignment of the lease executed by

her. The youngest child, a girl, was married in 1913, at the age of 16 years. Mrs. Trantum paid all the taxes on the land and used the income for her own personal benefit. During the twenty-six years after the death of their father, none of the heirs asserted any rights to the property. The widow, not as administratrix, but in her own right, as has been noticed, leased and mortgaged the premises on several occasions, the mortgages reciting valuable considerations. She treated the property as her own, and very little of its income was used for the support of the children. The fact that the property was being used by Mrs. Trantum as her own was a matter of public and record knowledge. None of the children made any public assertion of their claim of ownership as heirs of their father until this action had been brought by the appellants to quiet their title, at which time the oldest child had been of age for 26 years and the youngest for 8 years.

Under such circumstances, it would seem that their present assertion of any interest in the property is barred by their laches. It is immaterial therefore whether this quarter-section of land was the community property of the deceased and Mrs. Trantum or his separate property, for their laches would deprive the children of their interest, no matter what the character of the property might originally have been.

The testimony in this case is exclusively documentary, except for the testimony of Mrs. Trantum, which covers less than two pages of the statement of facts. She testified as follows: "While I was in possession of the land the children claimed an interest in it and I never claimed their interest for mine. I have acted always as administratrix of the estate since Mr. Trantum died." This uncorroborated statement is not of sufficient strength to overcome the conditions shown by

the undisputed record evidence. None of the children was called as a witness to assert that he or she had ever done anything in the nature of asserting his or her rights in the father's property, and the testimony is certainly convincing that by their neglect and acquiescence they should now be prevented from claiming any interest therein.

The facts in this case are strikingly similar to those in the case of *Ferrell v. Lord,* 43 Wash. 667, 86 Pac. 1060. In that case the father, being the survivor of the community, took possession of the community property, paid the taxes thereon, mortgaged it with covenants that he was the fee simple owner, and the mortgage was thereafter foreclosed, the defendant in that case taking title under the foreclosure. The action there was begun by the children. The estate had never been probated and the court held that by their laches the children had lost all their rights, having done nothing to assert them from 1889, the date of their mother's death, until 1903, a period of 14 years. In the case at bar, we have a period of 26 years of inactivity. The court there said:

"Considering the facts and circumstances of this case, and even assuming, for the sake of the present argument, that the respondent and his predecessor Ferrell have not been in continuous, adverse possession for either ten years or seven years; the evidence shows that prior to the commencement of this action nearly fourteen years had elapsed since the death of Julia A. Ferrell, thirteen years since the execution of said mortgage, and almost seven years since the foreclosure sale to the respondent Lord; that during the earlier portion of said time John Ferrell had exercised acts of ownership over said property; that he had occupied and improved the same; that he and the respondent Lord had paid all taxes assessed thereon; that no one of the appellants ever made any claim of title to said real estate; that they had never paid or

offered to pay taxes; that they knew their father John Ferrell claimed to own the property in his own right; that they knew he mortgaged the land intending thereby to create a lien on the entire estate; that the respondent purchased said mortgage in good faith and for a valuable consideration, believing it covered the entire title; that he afterwards foreclosed the same and, at the sheriff's sale, bid the entire amount of his judgment, thus satisfying his entire claim against his debtor John Ferrell; that he promptly took possession, and that all these facts were known to the appellants, who although under no disability, failed to assert any rights whatsoever. Appellants have made no effort, either by the allegations of their complaint or by evidence, to explain or in any way account for this inactivity and neglect. They simply rely upon their alleged title, which they claim to have inherited from their deceased mother some fourteen years prior to the commencement of this action. Do these facts and circumstances commend the appellants to a court of equity? Should they be allowed at this late date to assert their claims against the respondent Lord, who has in good faith paid his money for said mortgage, satisfied his foreclosure judgment, and acquired what he believed to be the full fee simple title to said real estate? The appellants have been guilty of such inexcusable neglect and delay that a court of equity should refuse to aid them in the prosecution of their stale demands. They have slept too long upon their rights. They have failed to act in good faith or with reasonable diligence. The equitable defense of laches has been clearly shown and was properly sustained by the trial court."

This quotation applies with equal effect to the facts before us now and there seems to be nothing that could or should be added thereto. To the same effect are the decisions in *Chezum v. McBride*, 21 Wash. 558, 58 Pac. 1067; *Kenney Presbyterian Home v. Kenney*, 45 Wash. 106, 88 Pac. 108; *Kline v. Galland*, 53 Wash. 504, 102 Pac. 440; *Cunningham v. Independence Consolidated*

*Mining Co.,* 58 Wash. 371, 108 Pac. 956; *Boyle v. Olsen,* 58 Wash. 670, 109 Pac. 203; *Little Bill v. Swanson,* 64 Wash. 650, 117 Pac. 487; *Harvey v. Laurier Mining Co.,* 106 Wash. 192, 179 Pac. 864; *Teeter v. Brown,* 130 Wash. 506, 228 Pac. 291.

Respondents, however, dispute the right of the appellants to raise the question of laches on this appeal. They say that laches were not pleaded, and that therefore the appellants cannot avail themselves of that defense against their assertion of title. The answer to this argument lies in the fact that the evidence introduced by the appellants on the trial showed laches, and upon the law established by statute and decision the pleadings must be taken as amended to conform to the proof. Section 1752, Rem. Comp. Stat. [P. C. § 7336]; *Hurley-Mason Co. v. Pacific Commissary Co.,* 111 Wash. 439, 191 Pac. 624; *State ex rel. Lincoln v. Superior Court,* 111 Wash. 615, 191 Pac. 805; *Gregg v. Gregg,* 117 Wash. 164, 200 Pac. 1084; *O'Neill v. Matthews,* 126 Wash. 360, 218 Pac. 222. In *Gay v. Havermale,* 30 Wash. 622, 71 Pac. 190, it was said:

"If evidence showing laches was introduced without objection, the pleadings could have been made to conform thereto. This court was then impressed that the findings of fact did not completely support a case for the application of the rule of laches, and observed that laches was in the nature of an equitable defense, by way of estoppel, and should have been specially pleaded in the answer. This observation seems to be misleading, and is not in accord with the views of the court in the cases which are mentioned above. The rule generally stated is that laches may arise on the hearing of the facts, when shown and claimed. Section 6535, Bal. Code, relative to appeals, provides, in substance, that amendments to the pleadings shall be presumed to be made if they ought to or could have been made in the trial court."

Therefore, under both the facts and the law, we come to the conclusion that the trial court was in error in sustaining the respondents' title to any of this quarter-section of land, and that the judgment should be reversed and a judgment ordered to be entered quieting title to the entire quarter-section in the appellants.

Tolman, C. J., Fullerton, and Mitchell, JJ., concur.