[No. 7766-0-I.  Division One.  January 12, 1981.]

PAUL K. MARSH, ET AL, *Respondents,* v. IVAN E. MERRICK, *as Administrator, Respondent.*

EVELYN MAY, ET AL, *Appellants,* v. IVAN E. MERRICK, *as Administrator, Respondent.*

EVELYN M. MAY, *Appellant,* v. IVAN E. MERRICK, *as Administrator, Respondent.*

*Dodel, Skone, Leonardson & Perkins* and *Larry C. Leonardson,* for appellants.

*Ivan E. Merrick* and *Richard Butler,* for respondents.

DURHAM, J.—The appellants, Muryel Walker and Evelyn May, brought a suit contesting the rejection of their claims against the estate of their mother, Mary Marsh. They appeal from the decision of the trial court denying their claims.

Paul K. Marsh, Sr., and Mary Marsh had four children: the appellants, Evelyn and Muryel, and their brothers, Hyrtice and Paul, Jr. The father died intestate in 1962. His estate, which was never probated, consisted principally of real estate and stock investments.

May testified that until 1967 the children believed that their father had left a will bequeathing his entire estate to their mother. In that year, they learned that he had died intestate and that they were entitled to a portion of his estate. In 1968, Walker assisted her mother in setting up a trust fund containing assets worth $26,000. The trust was administered by Walker for the benefit of her mother. May and Walker testified that the trust was established in order to separate their father's estate from their mother's property, and that the corpus of the trust represented the amount of the father's estate due to the children. Walker first invested the assets of the trust in mutual funds, but later transferred them to an investment in an Arizona realty company, which was secured by the assignment of a number of notes and mortgages.

In August 1971, Paul Marsh, Jr., was appointed conservator of Mary Marsh's estate by a California court. The court order establishing the conservatorship also ordered that the assets of the trust be distributed to the children of Mary Marsh. The assets were not so distributed, however, and immediately following the court hearing in California, Walker and May and their mother departed for Seattle, where their mother took up residence. Paul Marsh, Jr., was

subsequently appointed guardian of his mother's estate in Washington. In 1972, the trust was declared invalid and Walker was ordered to turn over all the trust assets to Paul Marsh, Jr., as guardian. The trust assets at that time were invested in the Arizona real estate company, which had gone bankrupt. After an expenditure of considerable time and effort, the guardianship succeeded in getting the assigned notes and mortgages from Walker and obtaining payments on some of them.

Walker apparently never fully complied with the court order, and turned over the assigned notes only after further litigation. By the time of Mary Marsh's death on May 26, 1976, the guardianship had succeeded in obtaining payments from some of the makers of the notes and was pursuing a number of others.

Walker and May filed a number of claims against Mary Marsh's estate, which were rejected by the respondent, Ivan Merrick, the administrator of the estate. They subsequently filed a suit to contest the rejection of their claims. Paul Marsh, Jr., also filed a suit to contest a rejection of his claim against the estate for reimbursement for expenses he had incurred as Mary Marsh's guardian. Among them were fees for legal services rendered for the guardianship by Richard Butler, who was also a party to the suit. The two cases were consolidated for trial. The trial court found that Butler was entitled to payment for a portion of his claimed services and that May and Walker were entitled to certain of Mary Marsh's assets. It held, however, that May and Walker were barred by laches from making any claim to the trust property and they appeal.

The trial court's resolution of the laches issue is contained in finding of fact No. 4:

> The estate of Paul K. Marsh, Sr., who died intestate in [1962], was never probated. The assets existing at the time of the father's death have all been sold and transferred. At no time during the Guardianship proceedings was claim made that any assets were properly those received through intestate succession from Paul K.

Marsh, Sr. The claims of plaintiffs Walker and May that the assets of the Estate of Mary A. Marsh are the residue of their father's unprobated estate, if they have any validity, are barred by laches.

■■ Contrary to appellants' assertion, it has long been recognized in Washington that laches may bar a claim to inherited property. *Meyer v. Trantum,* 135 Wash. 449, 237 P. 1006 (1925). This is so because the doctrine of laches is not concerned with the power to pass title to property. It assumes the existence of a valid claim to property, but refuses to enforce it when it would be inequitable to do so. The elements of laches are: (1) knowledge or reasonable opportunity to discover a cause of action; (2) an unreasonable delay in commencing that cause of action; (3) damage to defendant resulting from the unreasonable delay. *Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972).

It is unclear from the trial court's finding if it believed testimony by May and Walker that the trust was created to keep separate from their mother's estate property to which they were entitled as heirs of their father. However, the trial court's finding as to laches was not based upon appellants' assistance in creation of the trust, but upon their failure to assert any claim as heirs of their father to property held by their mother after the guardianship was established. Thus, the question presented is whether there was evidence to support the finding that May and Walker asserted no claim to assets from their father's estate during the guardianship proceeding. The order that established the conservatorship in California in 1971, and decreed that the property contained in the trust be distributed to the children, does suggest that a claim had been made by some of the Marsh children to the trust property. Appellants concede, however, that this part of the order was never enforced, and there is no evidence that they sought to have it enforced.

In 1972, a Washington court declared the trust invalid, due to the exercise of undue influence by Walker, and ordered her to turn over the trust assets to Paul Marsh, Jr.,

as his mother's guardian in Washington. Neither the record of that action, nor the order that resulted from it, was introduced into evidence. Walker testified that the only issue raised at the hearing was the validity of the trust. May testified that she did not attend the hearing, but later sought a rehearing on the issue of undue influence.

The attorney for the guardianship in Washington testified that Walker resisted complying with the order to turn over the trust property until 1976. The grounds for her refusal to comply are not disclosed. However, the attorney further testified that this dispute was resolved by a settlement between Walker and the guardianship. This is evidence from which the court could reasonably conclude that neither Walker nor May had sought to enforce their claim to their mother's property, either at the 1972 hearing or subsequent thereto.

Mere delay, however, standing alone, does not constitute laches. It is still necessary to demonstrate that the delay caused injury to the party raising the defense. *Rutter v. Rutter,* 59 Wn.2d 781, 370 P.2d 862 (1962). The trial court, in the finding set forth above, made no mention of harm resulting from appellants' delay. Because the respondent had the burden of proof on the issue, a finding in his favor may not be implied. Neither does the court's oral opinion make any mention of harm. Ordinarily, the failure of the trial court to make a factual determination on a material issue would require that the case be remanded for the entry of an appropriate finding. *Heikkinen v. Hansen,* 57 Wn.2d 840, 360 P.2d 147 (1961).

The record, however, contains undisputed evidence that the guardianship spent considerable time and money in its attempt to collect payments due on notes and mortgages in which Walker had invested the trust assets. The attorney for the guardianship testified that it was necessary to bring a number of lawsuits, most of them out of state, to obtain payment. Thus the guardianship made substantial expend-

itures in reliance on appellants' delay in asserting their claim. This is sufficient to establish injury as a matter of law. *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 588 P.2d 729 (1978).

Appellants make a separate argument in their brief that they should not be foreclosed from "be[ing] heard at some point" on other claims, relating to the guardianship, which they apparently still desire to bring. The guardianship was closed by a court order on December 22, 1976. The trial court issued a pretrial order, finding that the guardianship had been closed, and ordering that, with one exception, issues relating to it would not be considered as part of this case. Appellants did not assign error to the court's ruling, nor did they include this matter in their statement of issues pertaining to the assignments of error. This issue, therefore, cannot be considered on appeal. RAP 10.3(g).

Affirmed.

RINGOLD, A.C.J., and CALLOW, J., concur.

Reconsideration denied March 13, 1981.