[No. 35251.   *En Banc.*   August 4, 1960.]

LLOYD M. MACK et al., *Appellants*, v. ELDORADO WATER DISTRICT, *Respondent*.[1]

*Garland, Garland & Bishop (Marion Garland, Jr.,* of counsel), for appellants.

*Merkel & Cook (Farrell E. Cook,* of counsel), for respondent.

FINLEY, J.—Appellants, private owners of a thirty-acre tract of unimproved land located in Kitsap county, are holders of two permits, issued by the State Supervisor of Hydraulics, authorizing the appropriation of surface water from a certain unnamed stream. Respondent water district owns a forty-acre tract immediately to the west of appel-

[1]Reported in 354 P. (2d) 917.

lants' tract, and also holds two permits authorizing the appropriation of waters from the same stream. The stream consists of two branches (hereinafter referred to as the north branch and the south branch, respectively). These branches originate on respondent's land, converge near the southeast corner of respondent's land into a single water course which flows in a generally southeasterly direction toward Puget Sound, passing through the southern portion of appellants' land.

The first of appellants' two permits (authorizing the appropriation of an amount of water not to exceed .02 cubic feet per second) was issued on or about July 26, 1928. Respondent's two permits (surface water certificates #1596 and #1833, authorizing appropriation of .10 cubic feet per second and .05 cubic feet per second, respectively) appear to have been issued sometime subsequent to July 26, 1928, but prior to the year 1956. As matters stood prior to 1956, the appropriated waters of the stream were being diverted for domestic purposes in the following manner: (1) In the case of the .02 cubic feet per second, covered by appellants' permit, by means of a small wooden dam, located on the north branch of the stream; thence, through a two-inch pipeline across respondent's land and onto appellants' property; (2) in the case of the total of .15 cubic feet per second, covered by respondent's two permits, by means of two dams—one located on the north branch of the stream at a point some twenty feet downstream from appellants' dam; the other located on the south branch of the stream. It is further to be noted that appellants' rights, or right of way, respecting the small wooden dam and the two-inch pipeline, had been perfected by adverse user since 1913.

Appellants' second permit (authorizing the appropriation of an amount of water not to exceed .11 cubic feet per second) was issued by the supervisor on November 21, 1956. Thereafter, appellants entered upon respondent's land, without the latter's consent, and constructed a concrete dam at a point on the north branch of the stream, about five feet below the existing wooden dam and some fifteen feet upstream from respondent's diversion point.

After construction of the aforesaid concrete dam, appellants commenced the instant action, seeking to obtain a right to maintain the new dam and to replace the old two-inch pipeline with a new four-inch line. In their petition appellants cited, as authority for their action, RCW 90.04.030, which, insofar as is material, reads:

"Eminent domain. The beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire any property or rights when necessary for the storage of water for, or the application of water to, any beneficial use, including the right to enlarge existing structures employed for the public purposes mentioned in this title, and use the same in common with the former owner, and including the right and power to condemn an inferior use of water for a superior use. In condemnation proceedings the court shall determine what use will be for the greatest public benefit, and that use shall be deemed a superior one: . . . Such property or rights shall be acquired in the manner provided by law for taking private property for public use by private corporations."

After a trial on the merits, the trial judge rendered a memorandum decision, stating that respondent's use of the water from the stream was superior to appellants' use. He further entered findings of fact to the effect that appellants' new concrete dam (located upstream from respondent's diversion point) was "destroying . . . [respondent's] priority in the waters of said stream and endangering their municipal water system." The trial judge further declared

"That the stream, heretofore identified as the north branch, after leaving respondents diversion works, joins with the south branch and continues some 450 feet more or less where it enters upon petitioners land; that said stream thereafter flows across petitioners land and eventually flows into Puget Sound; that the height above sea level, at which said stream enters onto petitioners land, is such that the water can be easily utilized by petitioner for a water system; that there is no necessity, absolute or reasonable, for going upon the land of respondents which would give rise to a right for a decree of necessity."

Thereupon, the trial court dismissed appellants' petition

and ordered them to remove the new concrete dam. This appeal followed.

■ Appellants first urge that the trial court had no jurisdiction to determine who was making the best use of the water flowing through the stream. As we view the matter, this argument wholly overlooks that portion of RCW 90.04.030, which provides:

" . . . In condemnation proceedings the court shall determine what use will be for the greatest public benefit, and that use shall be deemed a superior one: . . . "

RCW 90.20.060, upon which appellants rely, is not in point. That statute merely requires that the Supervisor of Hydraulics, prior to issuing a permit to appropriate water, make a finding

" . . . that there is water available for appropriation for a beneficial use, and the appropriation thereof as proposed in the application will not impair existing rights or be detrimental to the public welfare, . . . "

However, this court has held that the issuance of a water permit by the Supervisor of Hydraulics is not an adjudication of private rights. *Madison v. McNeal* (1933), 171 Wash. 669, 19 P. (2d) 97; *Funk v. Bartholet* (1930), 157 Wash. 584, 289 Pac. 1018. Thus, the fact that the Supervisor of Hydraulics had issued a permit authorizing appellants to appropriate .11 cubic feet of water per second from the stream in question did not preclude the trial court, in the condemnation action, from determining which of the parties was making a better use of the available water.

■ Next, appellants contend that there is no evidence in the record to support the trial court's finding that the new concrete dam was destroying respondent's priority in the waters of the stream. In essence, appellants suggest that the record shows that, even if they were to draw their newly allotted .11 cubic feet of water per second from the north branch of the stream at a point above respondent's diversion point, a sufficient amount of water would still reach respondent's dam to allow respondent to draw off its allotted amount of water. We find nothing in the record to

support .this. In fact, according to a report filed by Dee Molenar, a geologist for the State Department of Conservation, Division of Water Resources, respecting his examination of the area at the time of appellants' application for their second appropriation permit, the total flow of the north branch of the stream amounts to only about .10 cubic feet of water per second.

◼ Finally, appellants attack the evidentiary basis for the trial court's finding that there exists no necessity for appellants to go upon respondent's land to capture and draw off the .11 cubic feet of water per second, covered by appellants' second permit. This finding was based upon conflicting evidence involving the comparative feasibility of taking the water from the point on respondent's land where appellants' new dam was constructed as against taking the water from some point on that portion of the stream which passes through appellants' own land.[2] We will not re-try questions of fact, involving the substitution of our judgment for that of the trial court, where a finding which has been attacked on appeal is based upon conflicting evidence. *Stewart v. Smith* (1960), 55 Wn. (2d) 563, 348 P. (2d) 970; *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183.

For the reasons stated hereinbefore, we are convinced that the trial court committed no error in dismissing appellants' petition and in ordering removal of the new dam which appellants had no right to construct.

---

[2]It is particularly to be noted in this respect that though geologist Molenar's report, above noted, indicates that the total flow of the north branch of the stream is only about .10 cubic feet per second, the flow of the south branch amounts to about .20 cubic feet per second. Thus, the total flow of the stream after the convergence of the two branches (which, as we have noted, occurs prior to the entry of the stream onto appellants' land) is about .30 cubic feet per second. Therefore, even after subtracting the total of .15 cubic feet of water per second, which respondent is authorized to withdraw, and the .02 cubic feet per second, which respondent concedes may be properly withdrawn by appellants from the point of their small wooden dam on the north branch, it may be seen that there still will be a flow through appellants' land of around .13 cubic feet per second, or more than enough to allow appellants to take their additional .11 cubic feet per second from a point on their own land.

The judgment of the trial court should be affirmed. It is so ordered.

ALL CONCUR.