18 P.3d 540 (2001)
143 Wash.2d 126
Wilbur G. HALLAUER and Josephine Hallauer, husband and wife; and Champerty Shores Owners Association, a Washington nonprofit corporation, Petitioners,
v.
SPECTRUM PROPERTIES, INC., a corporation, Defendant,
Ernesto C. Del Rosario and Madeliene B. Del Rosario, husband and wife, Respondents.
No. 68554-1.
Supreme Court of Washington, En Banc.
Argued June 27, 2000.
Decided February 22, 2001.
*541 Mansfield, Reinbold & Gardner, Owen M. Gardner, Okanogan, WA, Perkins, Cole, Charles W. Lean, Charles B. Roe, Olympia, WA, for petitioners.
Maxey Law Offices, Bevan Jerome Maxey, Spokane, WA, Diane Marie Walker, Spokane, WA, for respondents.
MADSEN, J.
Wilbur G. and Josephine Hallauer, who hold a certificated water right to water from a spring on neighboring land, seek to condemn a way across that land for transporting water to their property for domestic use, and to ponds for fish propagation. The Court of Appeals held that because the Hallauers' property is not landlocked and alternative sources of water are available, the Hallauers failed to prove a reasonable necessity for condemnation. We reverse the Court of Appeals and hold that the Hallauers are entitled to proceed with their condemnation action.

FACTS
The Hallauers and respondents Ernesto C. and Madeliene B. Del Rosario own adjacent property on the shore of Lake Osoyoos *542 in Okanogan County. Donald Thorndike was the Del Rosarios' predecessor in interest. In the mid-1970's, part of a bluff on Thorndike's property collapsed, revealing a natural spring. In the early 1980's the Hallauers built a home on their property with a heat pump and cooling system that used water from a well. The first winter, the heat pump froze because the water from the well was too cold for its proper operation. Mr. Hallauer learned that the water from the spring on Mr. Thorndike's property would be satisfactory for operation of the heat pump as well as for supplying water to ponds intended for fish propagation.
Mr. Thorndike and Mr. Hallauer agreed that Mr. Hallauer would apply to the Department of Ecology for a water right entitling him to withdraw water from the spring on the Thorndike property, and when the water right was granted Mr. Hallauer would pay Mr. Thorndike $500.[1] In March 1982, Mr. Thorndike signed the application for the water right as owner of the property, and Mr. Hallauer signed as the applicant. In March 1984, Mr. Hallauer sent a letter to Mr. Thorndike saying the application had been approved and enclosed a check for $500.
Mr. Hallauer developed the spring and installed a pipeline to transport water from the spring to his property for the heat pump and fish ponds. The property on which the ponds are located was developed into the Champerty Shores development, a private community. In 1984, fish were added to the ponds. In October 1984, the Department of Ecology issued a certificate of water right.
Mr. Thorndike's property was acquired by Spectrum Properties, Inc. following foreclosure proceedings. In October 1989, Mr. Del Rosario entered into a real estate contract for the purchase of the property, took possession, and began managing an apple orchard on it. During roadwork on the property, the Hallauers' pipeline was discovered, and the Del Rosarios demanded that the pipeline be removed.
Litigation ensued. Although the Hallauers originally obtained a judgment quieting title to a prescriptive easement across the Del Rosarios' property, that decision was reversed on appeal. On remand, the Hallauers sought, among other things, to condemn an easement for a pipeline to carry water from the spring to their property. Petitioner Champerty Shores Owners Association was added as a necessary party plaintiff because it had taken ownership of the fish ponds and an interest in the spring right. The trial court held that the Hallauers had failed to show a reasonable necessity for a private condemnation. On appeal, the Court of Appeals affirmed. This court granted discretionary review.

ANALYSIS
Although several other grounds for relief have been argued during litigation between the parties, the only matter before this court is whether the Hallauers are entitled to condemn an easement across the Del Rosarios' property for a pipeline to transport water from the spring to their property for use in the heat pump and cooling system and as a water supply for propagation of fish.
The authority to condemn a right of way to transport water has long existed in this state, both by constitutional and statutory provisions. The chief question posed by this case is whether the showing of necessity to condemn a right of way to transport water is identical to the showing required to condemn a private way of necessity. The Court of Appeals held that "necessity" means the same in both contexts, relying on RCW 8.24.010. We disagree because RCW 8.24.010 does not apply in the context here.
As we explain below, RCW 90.03.040 provides the statutory authority for condemnation in this case. Among other things, the statute directs that "property or rights shall be acquired [through condemnation] in the manner provided by law for the taking of private property for public use by private corporations." RCW 90.03.040. Therefore, chapter 8.20 RCW (eminent domain by corporations), rather than chapter 8.24 RCW, *543 provides the procedures for condemnation. RCW 8.20.070 states that at the hearing on a petition to condemn where the contemplated use is a public use, the court will enter an order of public use and necessity if it is "satisfied by competent proof that the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use ... that the public interest requires the prosecution of such enterprise ... and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the purposes of such enterprise."
In order to determine whether the Hallauers are entitled to an order of public use and necessity, we examine both public use and necessity, as the three conditions set out in RCW 8.20.070 are interrelated. See State v. Belmont Improvement Co., 80 Wash.2d 438, 442-43, 495 P.2d 635 (1972); State v. Dawes, 66 Wash.2d 578, 583, 404 P.2d 20 (1965). Also, the public interest condition and the necessity condition "are generally subsumed under the definition of `necessity'." City of Seattle v. Mall, Inc., 104 Wash.2d 621, 623, 707 P.2d 1348 (1985). The interrelatedness of the conditions is particularly apparent where water rights or rights of way to transport water are concerned. This is because of the adoption of the prior appropriation doctrine in this state for acquisition of new water rights; condemnation of rights of way to transport water is an integral component of application of water to beneficial use.
Accordingly, we begin by discussing the public use condition as a predicate to discussion of the necessity condition.
Our analysis begins with article I, section 16 of the Washington State Constitution, which provides:
Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made....[2]
As an initial matter, this constitutional provision does not require that condemnation for rights of way to transport water is subject to the same criteria as condemnation for private ways of necessity. The first sentence of article I, section 16 carves out two forms that a condemnation for "private" use may take. The constitution states the exceptions to the rule that private property may not be taken for private uses as: "except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes ." Const. art. I, § 16 (emphasis added).
This distinction was carried out in enabling legislation. In 1913, Rem.Rev.Stat. § 936-7 (RCW 8.24.010) was enacted to replace certain earlier enabling statutes. It provides for condemnation of "lands of [another] sufficient in area for the construction and maintenance of such private way of necessity, or for the construction and maintenance of such drain, flume or ditch, as the case may be." RCW 8.24.010. The title of the 1913 act containing RCW 8.24.010, like the constitutional provision, also sets forth the two types of condemnation authorized for private uses: "AN ACT relating to the taking of private property for private ways of necessity and for drains, flumes and ditches on or across the lands of others for agricultural, domestic or sanitary purposes." Laws of 1913, ch. 133, at 412 (emphasis added).
Thus, neither article I, section 16 nor some of the early enabling legislation mandates treating condemnation for a right of way to transport water the same as a condemnation for a private way of necessity.
Although RCW 8.24.010 was enacted as an enabling provision for article I, section 16, it soon gave way to RCW 90.03.040 where condemnation of water rights or rights of way to transport water are concerned. Rem.Rev. Stat. § 7354 (RCW 90.03.040) was enacted as part of the 1917 water code under which the prior appropriation doctrine became the sole method for acquisition of new water *544 rights. It provides in part that "[t]he beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire any property or rights now or hereafter existing when found necessary for the storage of water for, or the application of water to, any beneficial use."[3] RCW 90.03.040.
This statute was needed in order to implement the prior appropriation doctrine. Before adoption of the 1917 water code, two water rights doctrines applied in Washington. Under the doctrine of riparian rights, an owner of land on a stream or other body of water has the right to use the water. Crook v. Hewitt, 4 Wash. 749, 31 P. 28 (1892). The second doctrine, the prior appropriation doctrine, developed in the arid western states, and "provides that a right to water can be established only by putting water to beneficial use and that the first such use in time is the first such use in right." Charles B. Roe & Peter R. Anderson, Water Law, in 1C Kelly Kunsch, Washington Practice: Methods of Practice § 91.4 (4th ed.1997). Both of these types of water rights could be acquired in Washington in its early history.
Where a riparian water right was involved, the water right holder generally had access to sufficient water because water was adjacent to or within the holder's property.[4] However, prior appropriation rights, by definition, do not require that the owner's land abut a stream or other water body. Where appropriative rights are concerned, there "need be no relationship between the source of the water and the locus of use." A. Dan Tarlock, Law of Water Rights and Resources § 5.24, at 5-41 (2000). Accordingly, there must be some means of delivering the appropriated water to the owner's land. The authority to condemn property for rights of way to transport water is thus an essential part of the prior appropriation scheme: "Access to water open to appropriation can generally be acquired by eminent domain. To prevent de facto riparianism, western states passed statutes permitting a water rights claimant to condemn the necessary rights of way to bring the water from the stream to the place of his use." Id. at 5-42.
The constitutionality of these statutes was originally at issue because the power of eminent domain was limited to public uses. Id. at 5-43. However, by the time RCW 90.03.040 was enacted the validity of such statutes was settled. In Clark v. Nash, 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085 (1905), the Court upheld a Utah statute granting the right to condemn land for the purpose of conveying water in ditches across that land for irrigation of the condemnor's land alone. The Court observed that
[w]here the use is asserted to be public, and the right of the individual to condemn land for the purpose of exercising such use *545 is founded upon or is the result of some peculiar condition of the soil or climate, or other peculiarity of the State, where the right of condemnation is asserted under a state statute, we are always, where it can fairly be done, strongly inclined to hold with the state courts, when they uphold a state statute providing for such condemnation. The validity of such statutes may sometimes depend upon many different facts, the existence of which would make a public use, even by an individual, where, in the absence of such facts, the use clearly be private.
....
[Water rights] are not the same in the arid and mountainous States of the West that they are in the States of the East. These rights have been altered by many of the Western States, by their constitutions and laws, because of the totally different circumstances in which their inhabitants are placed....
Clark, 198 U.S. at 367-68, 370, 25 S.Ct. 676. It is now settled that "[e]minent domain may be used to transport water so long as the use is beneficial; beneficial uses are presumed public uses." Tarlock, supra, § 5.24, at 5-42.
RCW 90.03.040, like statutes in other western states, declares that the beneficial use of water is a public use. This declaration of public use applies even if the water is used by an individual solely on that individual's private land. Article I, section 16 speaks both of condemning private property for private uses, including "for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes," and of private property for public purposes. However, "private use" as used in the constitutional provision is imbued with a public nature where condemnation of water rights and rights of ways to transport water are concerned. Taking private property for private purposes within the meaning of the constitutional provision has been explained as follows:
"[I]t is not essential, in order to constitute an act of eminent domain, that the use for which the property is taken should be of a public nature, that is, a use in which the public participates, directly or indirectly, as in the case of highways, railroads, public service plants and the like. It is sufficient that the use of the particular property for the purpose proposed, is necessary to enable individual proprietors to utilize and develop the natural resources of their land, as by reclaiming wet or arid tracts, improving water power or working a mine. In such cases the public welfare is promoted by the increased prosperity which necessarily results from developing the natural resources of the country...." Lewis, Eminent Domain (3d ed.), § 1.
State ex rel. Mountain Timber Co. v. Superior Court, 77 Wash. 585, 587, 137 P. 994 (1914). The Colorado Supreme Court has similarly said that although the words "private use" appear in the state's constitution and statutes, it "is obvious that they do not mean a strictly private use; that is to say, one having no relation to the public interest. The fact that the Constitution permits private property to be taken for certain specified uses is an implied declaration that such uses are so closely connected with the public interest as to be at least quasi public...." Pine Martin Mining Co. v. Empire Zinc Co., 90 Colo. 529, 11 P.2d 221, 225 (1932).
In Galbraith v. Superior Court, 59 Wash. 621, 629, 110 P. 429 (1910), the court discussed this principle in the context of beneficial use of water. The court noted that article I, section 16, provides for eminent domain for certain private purposes, including ditches for agricultural purposes. Although the provision
in terms seems to give the power to take for private use, it was evidently adopted upon the theory that the public would be sufficiently benefited by the taking for such a purpose to warrant the taking; that is, though it be seemingly called a private use by these words of the constitution, it is also in effect a public use in view of the necessities of a state like ours having vast areas of arid land.
59 Wash. at 629, 110 P. 429. The court explained that the reclamation through irrigation of one small field by an individual promotes the development and adds to the taxable wealth of the state as well as reclamation *546 by irrigation of large areas. Id. at 632, 110 P. 429.
The benefit to the public which supports the exercise of the power of eminent domain for purposes of this character, is not public service, but is the development of the resources of the state, and the increase of its wealth generally, by which its citizens incidentally reap a benefit. Whether such development and increased wealth comes from the effort of a single individual, or the united efforts of many, in our opinion does not change the principal upon which this right of eminent domain rests.
Id. at 631, 110 P. 429; see also, e.g., Prescott Irrig. Co. v. Flathers, 20 Wash. 454, 458-59, 55 P. 635 (1899); White v. Stout, 72 Wash. 62, 66, 129 P. 917 (1913). The same principle was discussed by the United States Supreme Court in Clark, quoted above.
While these state cases preceding enactment of RCW 90.03.040 treat transportation of water for irrigation as sufficiently public in nature to allow condemnation for conveying the water, the statute, like the constitution, encompasses other beneficial uses. Article I, section 16 specifically refers to agricultural, domestic, or sanitary purposes. Article XXI, section 1 states that "use of the waters of this state for irrigation, mining and manufacturing purposes shall be deemed a public use." This latter provision makes the stated purposes public purposes, "but it does not preclude the state, through its legislature, from declaring other purposes to be also public in their nature." State ex rel. Andersen v. Superior Court, 119 Wash. 406, 409-10, 205 P. 1051 (1922). As noted, RCW 90.03.040 declares that the beneficial use of water is a public use.
At present, the vast majority of this state's citizens do not engage in agriculture. Yet the development and wealth of this state derived from nonagricultural endeavor is unquestionably dependent upon beneficial use of water, including domestic use of water.[5] Our state's citizens must have use of water, not merely for economic development of their own land, but also that they can live and work throughout the state in a wide variety of occupations. We live, more than ever, in a time of limited water resources and expanding growth. Application of water to beneficial use, as contemplated by our water codes, is a crucial factor in sustaining this state and its people.
The legislative declaration in RCW 90.03.040 that beneficial use of water is a public use must also be viewed in light of other language in article I, section 16, which states that "[w]henever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public." This does not mean, however, that the Legislature cannot declare public uses. State ex rel. Andersen, 119 Wash. at 410, 205 P. 1051. "The Legislature can declare in the first instance that the purpose is a public one, and it remains the duty of the court to disregard such assertion if the court finds it to be unfounded." Id. A legislative declaration will be accorded great weight. Port of Seattle v. Isernio, 72 Wash.2d 932, 936, 435 P.2d 991 (1967); Miller v. City of Tacoma, 61 Wash.2d 374, 383-84, 378 P.2d 464 (1963).
The Legislature's declaration that beneficial use of water is a public use is not unfounded. We turn again to the historical context. As noted, the prior appropriation doctrine developed in recognition of the value and scarcity of water in western states. Indeed, the importance of beneficial use of water led to the decline of the riparian system in this state:
Strict application of the riparian rights doctrine led to problems. The riparian rights doctrine prevented appropriative or riparian development by others, even if the *547 riparian rights had never been exercised. As population density increased, demand for water grew and the vitality of the riparian doctrine began to wane. See Trelease, Coordination of Riparian and Appropriative Rights to the Use of Water, 33 Tex. L.Rev. 24, 25-26 (1954).
Dep't of Ecology v. Abbott, 103 Wash.2d 686, 691, 694 P.2d 1071 (1985). Thus, condemnation of riparian rights was upheld in early cases. For example, in 1907 this court upheld an 1890 statute that authorized condemnation of riparian rights for irrigation, subject to the riparian's irrigation needs. Id. (citing State ex rel. Kettle Falls Power & Irrig. Co. v. Superior Court, 46 Wash. 500, 90 P. 650 (1907)); see also State ex rel. Liberty Lake Irrig. Co. v. Superior Court, 47 Wash. 310, 313-14, 91 P. 968 (1907) ("[i]f [the riparian] is not using the water and does not propose to use it as soon as practicable in the ordinary and reasonable development or cultivation of his lands, then there is no reason why the water should be withheld from others who need and will promptly use it if permitted").
RCW 90.03.040 allows, among other things, condemnation of a water right for a proposed superior use. Shortly after the statute's enactment in 1917, the court held that a nonriparian owner could condemn a riparian's right, where the nonriparian sought immediate use for power while the riparian intended future use. State ex rel. South Fork Log-Driving Co. v. Superior Court, 102 Wash. 460, 470, 173 P. 192 (1918).
Appropriative rights thus played an early and vital role in this state's water law, and, with erosion of the riparian rights doctrine, have become the dominant form of water rights in this state. This evolution occurred because of the enormous importance, given the limited availability of water, of actual beneficial use of water to develop land, and rejection of speculative interests. See, e.g., State ex rel. Liberty Lake Irrig. Co., 47 Wash. at 313-14, 91 P. 968. The importance of water in this state simply cannot be overstated.
We conclude that the Legislature's declaration that beneficial uses are public uses, coinciding with its choice of prior appropriation as the sole basis for acquisition of new water rights in this state in 1917, is entitled to deference.
Our conclusion accords with the laws of other western states that provide that condemnation of any property or rights necessary to apply water to beneficial use is a condemnation for a public use. The Idaho State Constitution provides that
[t]he necessary use of lands for the construction of reservoirs or storage basins, for the purpose of irrigation, or for the rights of way for the construction of canals, ditches, flumes or pipes, to convey water to the place of use for any useful, beneficial or necessary purpose ... is hereby declared to be a public use....
Private property may be taken for public use [provided just compensation is paid]....
Idaho Const. art. I, § 14.
COLO.REV.STAT. § 37-86-102 provides that "[a]ny person owning a water right or conditional water right shall be entitled to a right-of-way through the lands which lie between the point of diversion and point of use or proposed use for the purpose of transporting water for beneficial use in accordance with said water right or conditional water right." The Colorado Supreme Court held in In re Application for Water Rights of Bubb, 200 Colo. 21, 610 P.2d 1343 (1980) that the owner of a conditional water right was authorized to condemn a right of way to transport water for beneficial uses. The court noted that the ultimate sources of the state statute were Colo. Const. art. II, § 14 and Colo. Const. art. XVI, § 7. The first of these constitutional provisions provides that private property shall not be taken for private use without the consent of the owner, "except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes." Colo. Const. art. II, § 14. The second provides for rights of ways across public, private and corporate lands for transportation of water for domestic purposes, irrigation, mining and manufacturing and drainage, upon payment of just compensation.
*548 In Kaiser Steel Corp. v. W.S. Ranch Co., 81 N.M. 414, 467 P.2d 986 (1970), the court examined state constitutional and statutory law governing condemnation of rights of way to transport water. The court noted that N.M. STAT. ANN. § 75-1-3 provides a right in "`any person, firm, association or corporation' "to condemn land for a right of way for "`construction, maintenance and operation'" of "`canals, ditches ... pipelines or other works for the storage or conveyance of water for beneficial uses....'" Kaiser Steel, 467 P.2d at 988 (quoting statute). The court observed that the state constitution allows condemnation only for public uses. Id. The court then described the state's history of water rights, noting that the prior appropriation system had been adopted given that "[w]ater conservation and preservation is of utmost importance. Its utilization for maximum benefits is a requirement second to none, not only for progress, but for survival." Id. at 989. The court held that it was not the ultimate use of the water that controlled the issue of public use, but rather beneficial use of the water. Id. at 991.
Significantly, the court said that while it had held that irrigation uses were public uses in earlier cases, "[w]e do not suppose for a moment that it is the use for growing crops or producing food that has moved this Court to hold as it has concerning irrigation as a public use. Rather, it must have been the fact of beneficial use of water which unquestionably is of the greatest importance to this state, that dictated the result." Id. The court said that "[i]n view of our state's environmental situation, the distribution of water is of paramount importance, justifying the defining of such distribution as a `public use.'" Id. at 993.
The same is true in Washington. Where water is limited, where water rights do not depend upon riparian access to water, and where application of water to beneficial use is required to hold a water right, distribution of water is imperative and so is the ability to acquire a way to convey the water to its place of use.
The Del Rosarios complain, though, that if obtaining a certificated water right is all that is necessary to justify exercise of the power of eminent domain under RCW 90.03.040, then the Department of Ecology determines property rights issues which it has no right to determine.
One seeking a water right in this state must apply for a permit, which may be issued only if the Department finds (1) that water is available, (2) for a beneficial use, and that (3) an appropriation will not impair existing rights, or (4) be detrimental to the public welfare. RCW 90.03.290. (Appropriations of groundwater must comply with surface water code provisions, RCW 90.03.250 to .340, which are expressly incorporated into the groundwater code. RCW 90.44.060.) A permit, and ultimately a water right certificate, may be obtained only where water is applied to beneficial use. "The principle that water must be used for a beneficial purpose is a fundamental tenet of the philosophy of water law in the West." Department of Ecology v. Acquavella, 131 Wash.2d 746, 755, 935 P.2d 595 (1997). "`An appropriated water right is established and maintained by the purposeful application of a given quantity of water to a beneficial use upon the land.'" Dep't of Ecology v. Grimes, 121 Wash.2d 459, 468, 852 P.2d 1044 (1993) (quoting Neubert v. Yakima-Tieton Irrig. Dist., 117 Wash.2d 232, 237, 814 P.2d 199 (1991)). Perfection of an appropriative right requires that appropriation is complete only when the water is actually applied to a beneficial use. See, e.g., Ellis v. Pomeroy Improvement Co., 1 Wash. 572, 21 P. 27 (1889).[6]
The Department must, in reaching a decision on a water right application, consider beneficial use and the public welfare, as well as whether the proposed use would be consistent with the highest feasible use of the water and with achieving the maximum net *549 benefits to the people of the state, see RCW 90.03.290 and RCW 90.54.020(2).
The Legislature has delegated to the Department the authority to issue water rights in compliance with the relevant statutes. The Department, in issuing a water right, makes no determination of any interests in land, but instead carries out its delegated duties, as indeed it must.
As a separate matter, the Legislature has also declared that beneficial uses are public uses for purposes of eminent domain. Whether the power of eminent domain may be exercised is a constitutional and statutory issue legally distinct from the Department's acts in issuing water rights.
Crescent Harbor Water Co. v. Lyseng, 51 Wash.App. 337, 340, 753 P.2d 555 (1988), relied upon by the Del Rosarios, actually supports our analysis. In Crescent Harbor, the question was whether a corporation organized to own and maintain an existing water supply system had acquired a prescriptive, easement over Lyseng's property. Lyseng argued that the corporation had failed to allege compliance with provisions of the water code, had failed to join as a necessary party under the code, and had failed to exhaust administrative remedies under water rights statutes. The Court of Appeals rejected these arguments on the ground that a determination of a water right is a different legal matter from the determination whether a prescriptive easement was acquired. Crescent Harbor Water Co., 51 Wash.App. at 340, 753 P.2d 555. As the court correctly said, and as is true here, the Department has no authority to adjudicate private property rights. Id.
Our discussion of the public use question sets the stage for discussion of the necessity question. RCW 90.03.040 provides that the right of eminent domain may be exercised by any person "to acquire any property ... when found necessary for ... the application of water to[ ] any beneficial use." (Emphasis added.) "The word `necessary,' when used in or in connection with eminent domain statutes, means reasonable necessity, under the circumstances of the particular case." City of Tacoma v. Welcker, 65 Wash.2d 677, 683-84, 399 P.2d 330 (1965) (citing State ex rel. Lange v. Superior Court, 61 Wash.2d 153, 377 P.2d 425 (1963)).
However, rather than determining whether the Hallauers established that a right of way across the Del Rosarios' land was necessary in order to put water from the spring to beneficial use, as RCW 90.03.040 directs, the Court of Appeals applied RCW 8.24.010. That court read RCW 8.24.010 as providing that an easement for transporting water may be condemned only where the land on which the water is to be used is landlocked: "An owner ... of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment" is authorized to condemn such an easement. RCW 8.24.010.[7] The court reasoned that the Hallauers must show both a public use and reasonable necessity, and they had failed to show the latter because the Hallauers' property is not landlocked, other forms of energy are available to heat and cool their home, and alternate sources of water are available.
This analysis overlooks the fact that RCW 90.03.040 does more than declare that beneficial use of water is a public use. The statute also provides that any person can condemn a right of way to transport water where necessary to apply the water to beneficial use. RCW 90.03.040; State ex rel. Lincoln v. Superior Court, 111 Wash. 615, 191 P. 805 *550 (1920) (Laws of 1917, § 4 at 448 permits condemnation of ditch by one of its owners and cotenants for carrying additional water from another source to its lands); State ex rel. Gibson v. Superior Court, 147 Wash. 520, 266 P. 198 (1928) (RCW 90.03.040 and Const. art. I, § 16 provide for the right of condemnation of rights of way to transport water over the lands of another for domestic and irrigation purposes). Thus, in marked contrast to RCW 8.24.010, RCW 90.03.040 does not require necessity based upon the landlocked nature of the condemnor's property, but expressly states the relevant necessity as "necessary for the storage of water for, or the application of water to, any beneficial use." (Emphasis added.)
We recognize that the Court of Appeals analysis is supported by State ex rel. Henry v. Superior Court, 155 Wash. 370, 284 P. 788 (1930). There, the court reasoned that Laws of 1917, ch. 117 is in pari materia with Laws of 1913, ch. 133, which include what is now RCW 8.24.010. 155 Wash. at 374-75, 284 P. 788. The court read the two statutes together, and concluded that the same analysis applies as to condemnation of rights of way for transporting water as applies to condemnation of property for a logging railroad easement. 155 Wash. at 375-76, 284 P. 788. The court therefore emphasized that in order to condemn a right of way to transport water, the condemnor's property must be landlocked with no other available water. 155 Wash. at 376, 284 P. 788.
We conclude that the analysis in State ex rel. Henry is flawed. The principle of reading statutes in pari materia applies where statutes relate to the same subject matter. In re Personal Restraint Petition of Yim, 139 Wash.2d 581, 592, 989 P.2d 512 (1999). Such statutes "`must be construed together.'" Id. (quoting State v. Houck, 32 Wash.2d 681, 684-85, 203 P.2d 693 (1949)). "In ascertaining legislative purpose, statutes which stand in pari materia are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes." State v. Wright, 84 Wash.2d 645, 650, 529 P.2d 453 (1974). If the statutes irreconcilably conflict, the more specific statute will prevail, unless there is legislative intent that the more general statute controls. Wark v. Nat'l Guard, 87 Wash.2d 864, 867, 557 P.2d 844 (1976); Pearce v. G.R. Kirk Co., 22 Wash.App. 323, 327, 589 P.2d 302 (1979). Courts also consider the sequence of all statutes relating to the same subject matter. Tunstall v. Bergeson, 141 Wash.2d 201, 211, 5 P.3d 691 (2000), pet. for cert. filed (Wash. Jan. 4, 2001).
In applying the same standard of necessity to condemnation of rights of way for transporting water as applies to private ways of necessity under RCW 8.24.010, the analysis in State ex rel. Henry failed to give any effect to RCW 90.03.040. Both statutes contemplate rights of way for transporting water. RCW 8.24.010 provides for the right of eminent domain if the condemnor's land is so situated that a right of way across the land of another to transport water for agricultural, domestic, and sanitary purposes is necessary for the proper use and enjoyment of the condemnor's land. RCW 90.03.040 provides for the right of eminent domain to any person if necessary for the application of water to beneficial use.
Although the goal is to read statutes related to the same subject together if possible, there is an obvious conflict between the statutes where rights of way to transport water are concerned. RCW 90.03.040 is the more specific of the statutes regarding condemnation for transportation of water and is also the later of the enactments. These two factors indicate that insofar as the statutes conflict, RCW 90.03.040 prevails. Wark, 87 Wash.2d at 867, 557 P.2d 844; Pearce, 22 Wash.App. at 327, 589 P.2d 302. This does not mean that RCW 8.24.010 is without import. That statute still applies insofar as condemnation of private ways of necessity are condemned, both prescribing whether eminent domain for such ways is authorized and defining such ways. It also may be relied upon where condemnation of a right of way for drains, flumes, or ditches for agricultural, domestic or sanitary purposes is necessary for the proper use and enjoyment of the condemnor's land, i.e., landlocked land. It cannot apply, however, to preclude condemnation of rights of ways to transport water as *551 authorized by RCW 90.03.040. To the extent that State ex rel. Henry is to the contrary, it is overruled.
Our reading of these statutes is bolstered by the last line of the proviso of RCW 90.03.040, which, as we noted above, provides that acquisition of property or rights under the statute shall be "in the manner provided by law for the taking of private property for public use by private corporations." The Legislature plainly intended that actions for condemnation of water rights and rights of ways to transport water be brought under RCW 90.03.040, with the procedures of chapter 8.20 RCW (eminent domain by corporations) applying, not those of chapter 8.24 RCW. Further, by directing that the manner for acquiring rights or property be the same as for takings for public use, the legislative intent that the "landlocked land necessity" expressed in RCW 8.24.010 not apply is apparent. This is because RCW 8.20.070 expressly addresses condemnation petitions for proposed public uses and for private ways of necessity. The Legislature's directive that the procedures and determinations for condemnation for public uses apply plainly indicates it did not intend that the procedures and determinations for private ways of necessity apply.[8]
Our determination that RCW 90.03.040 applies in this case accords with most of this court's decisions in cases where condemnation has been sought for transporting water for beneficial use. In these cases the court has considered only RCW 90.03.040[9] and the state constitutional provisions, and has not relied on or referenced RCW 8.24.010. E.g., State ex rel. Lincoln v. Superior Court, 111 Wash. 615, 191 P. 805 (1920); State ex rel. Andersen v. Superior Court, 119 Wash. 406, 205 P. 1051 (1922); State ex rel. Gibson v. Superior Court, 147 Wash. 520, 266 P. 198 (1928); State ex rel. Kirkendall v. Superior Court, 130 Wash. 661, 228 P. 695 (1924); Mack v. Eldorado Water Dist., 56 Wash.2d 584, 354 P.2d 917 (1960).[10]
This court has on several occasions addressed necessity as the need for the right of way to transport the water through the land of another in order to use it for a sufficiently public purpose. See State ex rel. Ballard v. Superior Court, 114 Wash. 663, 195 P. 1051 (1921); State ex rel. Kirkendall, 130 Wash. 661, 228 P. 695. In Mack, the appellants held two appropriative water rights. They acquired a right of way for transporting water under the first right over the respondent's property by adverse user. The system for conveying the water consisted of a small wooden dam and a two-inch pipeline. After acquiring the second water right, the appellants went on respondent's land and constructed a new concrete dam upstream from the diversion point used by respondent for withdrawing water under water rights held by respondent.
Appellants then commenced an action under RCW 90.03.040 seeking to obtain the *552 right to maintain the new dam and replace the two-inch pipe with a four-inch pipe. The trial court entered findings of fact, including the fact that as the stream entered the appellants' land, its height was such that the water could easily be used by the appellants, and therefore there was no necessity for going upon the respondent's land which would give rise to a right for a decree of necessity. Mack, 56 Wash.2d at 586, 354 P.2d 917. This court upheld the trial court's determination based upon the comparative feasibility of taking the water from a point on the respondent's land or on appellants' land where the same stream passed through the property. Id. at 588, 354 P.2d 917. Thus, we recognized the statutory necessity standard, i.e., reasonable necessity for the application of the water to beneficial use. See also Canyon View Irrig. Co. v. Twin Falls Canal Co., 101 Idaho 604, 610, 619 P.2d 122 (1980) (necessity requirement satisfied where alternate route would involve excessive cost and there was no natural waterway to transport water by gravity).
Because RCW 90.03.040 provides for condemnation of rights of way to transport water for application to beneficial use, the Del Rosarios and the Court of Appeals have mistakenly relied on cases involving private ways of necessity where necessity largely turned on the landlocked nature of the land of the party seeking condemnation.
The Hallauers propose to use water under their certificated water right for use in their heat pump and cooling system, and for fish propagation. Their domestic use of water is clearly a beneficial use falling within the Legislature's declaration that beneficial uses are public uses. See RCW 90.54.020; State ex rel. Gibson, 147 Wash. at 523, 266 P. 198 ("[t]he advantageous use of the water on the lands for domestic purposes clearly appears"); State ex rel. Andersen, 119 Wash. 406, 205 P. 1051. It is also a use that the constitution expressly recognizes as supporting condemnation for a "private purpose." See Const. art. I, § 16.
The necessity for the right of way is obvious. The water right that the Hallauers hold allows withdrawal of water from the spring on the Del Rosarios land. The only way in which the water can be conveyed to the Hallauers' property is over or through the Del Rosarios' land.
Accordingly, the Court of Appeals' holding that necessity has not been established must be reversed.
The Del Rosarios contend, however, that the Hallauers do not have the right to appeal the trial court's decision on their eminent domain claim. This is a new issue raised for the first time in supplemental briefing in this court. The Del Rosarios cite only one case from the 1950's, and fail to address the rules for appellate procedure. In light of those rules, we have doubts about the correctness of their claim, but decline to address the issue in the absence of sufficient briefing. See Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 169, 876 P.2d 435 (1994); State v. Hill, 123 Wash.2d 641, 648, 870 P.2d 313 (1994).
The Del Rosarios also seek attorney fees in this court pursuant to RCW 8.24.030. The Hallauers maintain that if they prevail on this review, the award of attorney fees on appeal should be reversed. Chapter 8.24 RCW does not apply in this case. Accordingly, the statute does not serve as the basis for awarding attorney fees in this court, or in the Court of Appeals. For this reason, aside from any other considerations, we decline to award fees in this court and we reverse the Court of Appeals' award of attorney fees to the Del Rosarios.[11]
The Court of Appeals is reversed, and this case is remanded for further proceedings.
SMITH, JOHNSON, IRELAND and BRIDGE, JJ., and GUY and TALMADGE, JJ. Pro Tem., concur.
SANDERS, J. (dissenting).
Wilbur and Josephine Hallauer contend the trial court and Court of Appeals erred *553 when each dismissed their complaint to condemn a private way of necessity, and a majority of our court agrees a private right of condemnation is available under these circumstances. Specifically, the issue here is whether a certified water right entitles private parties to condemn land "necessary" to utilize that water right notwithstanding other sources of water available for their use absent condemnation.
A. Const. art. I, § 16, and chapter 8.24 RCW
The Washington Constitution generally prohibits the taking of private property for private use. However, article I, section 16, expressly allows private property to be taken to create "private ways of necessity." This section states in part:
Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made.... Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public....
Const. art. I, § 16. As this provision is not self-executing, conditions under which private property may be condemned for private ways of necessity are outlined in chapter 8.24 RCW. Brown v. McAnally, 97 Wash.2d 360, 366, 644 P.2d 1153 (1982). RCW 8.24.010 provides in part:
An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity or to construct or maintain any drain, flume or ditch, on, across, over or through the land of such other, for agricultural, domestic or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, or for the construction and maintenance of such drain, flume or ditch, as the case may be.
The public policy underlying this clause in article I, section 16, as well as RCW 8.24.010, is to prevent rendering landlocked property useless. Sorenson v. Czinger, 70 Wash.App. 270, 278, 852 P.2d 1124 (1993). That necessity required to condemn a private way of necessity is not absolute. Rather, the party seeking the private way must only show it be reasonably necessary under the particular facts of the case. Brown, 97 Wash.2d at 367, 644 P.2d 1153. However because this statute permits a landowner to take property from another without any showing of public necessity, it must be strictly construed and limited to that which is expressly conferred or necessarily implied. Jobe v. Weyerhaeuser Co., 37 Wash.App. 718, 724, 684 P.2d 719 (1984) ("`Whatever is not plainly given is to be construed as withheld.'") (quoting 1 Julius L. Sackman, Nichols on Eminent Domain § 3.213[1] (3d rev. ed.1981)).
The Hallauers correctly note property owners have a vested interest in water rights to the extent the rights have been beneficially used. See Dep't of Ecology v. Adsit, 103 Wash.2d 698, 705, 694 P.2d 1065 (1985) (citing Dep't of Ecology v. Acquavella, 100 Wash.2d 651, 655, 674 P.2d 160 (1983)). From this the Hallauers argue condemnation of a private way of necessity is required for the proper use and enjoyment of the underlying property right-the water right. Supp'l Br. of Pet'rs at 16-17. However this novel argument is neither supported by the plain language of RCW 8.24.010 nor the common law.
Contrary to the Hallauers' expansive reading of RCW 8.24.010, the plain language of this statute refers only to "land," as opposed the more general concept of "property" which includes such things as water rights. See Black's Law Dictionary 1216 (6th ed. 1990) ("Property embraces everything which is or may be the subject of ownership...."). RCW 8.24.010 unequivocally provides:
An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is *554 necessary for its proper use and enjoyment to have and maintain a private way of necessity ... may condemn and take lands of such other....
(Emphasis added.) This court has previously adopted the common meaning of the term "land":
In Webster's Unabridged Dictionary (2d ed.), the first definition of the word land is given as "the solid part of the earth's surface; distinguished from sea." A river bed would fall within this definition. Also, in Black's Law Dictionary, the definition is as follows:
"Land, in the most general sense, comprehends any ground, soil, or earth whatsoever; as fields, meadows, pastures, woods, moors, waters, marshes, furzes, and heath."
King County v. Tax Comm'n, 63 Wash.2d 393, 397, 387 P.2d 756 (1963). Accordingly, the terms "land" and "property right" are not interchangeable as the Hallauers suggest. Because RCW 8.24.010 must be strictly construed and limited to that which is expressly conferred or necessarily implied, the plain language of the statute does not support condemnation of a private way of necessity unless it is necessary to the proper use and enjoyment of one's land. Jobe, 37 Wash.App. at 724, 684 P.2d 719.
Just as the plain language of RCW 8.24.010 does not support the Hallauers' argument, there are no cases permitting condemnation of a private way of necessity to access water without a finding such water is necessary for the proper use and enjoyment of the land itself. The majority asserts the Court of Appeals "mistakenly relied on cases involving private ways of necessity where necessity largely turned on the landlocked nature of the land of the party seeking condemnation." Majority at 552. I disagree. The Court of Appeals and Ernesto and Madeliene Del Rosario do rely on cases where private ways of necessity were granted to landlocked property owners, but it is not the landlocked nature of the property which is determinative. These cases turn on whether the property would be rendered useless but for the condemnation.
In State ex rel. Henry v. Superior Court, 155 Wash. 370, 284 P. 788 (1930), we reviewed an order of necessity for a pipeline easement to carry water to arid land requiring irrigation to produce commercial crops. There the fact the land to be irrigated was separated from the water source by another's land was not determinative. Rather, we emphasized the water was necessary for the proper use and enjoyment of the land because it would be rendered worthless without irrigation:
Respondent's orchard land is so situated, with respect to the only source of water and the land of the relators, that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity for a pumping location and pipe line on and across relators' land to force and carry water for irrigation purposes to the respondent's orchard, else the orchard will become worthless.
Henry, 155 Wash. at 376, 284 P. 788. Because the only source of water was located on another's property and the orchard would be worthless without irrigation, we held the landowner adequately proved necessity of a private way for the use and enjoyment of his land. Here, however, it is uncontested the Hallauers have three alternative sources of water and several reasonably priced and readily available mechanical alternatives to heat and cool their home. Clerk's Papers at 830-31. Thus Henry is clearly distinguishable, as the Hallauers have not demonstrated the water from the Del Rosarios's spring is necessary for the proper use and enjoyment of their land.
Even the Hallauers rely on a line of cases similar to Henry to support their argument. See Br. of Appellant at 31-34 (citing State ex rel. Galbraith v. Superior Court, 59 Wash. 621, 110 P. 429 (1910); White v. Stout, 72 Wash. 62, 129 P. 917 (1913); State ex rel. Gibson v. Superior Court, 147 Wash. 520, 266 P. 198 (1928); State ex rel. Kirkendall v. Superior Court, 130 Wash. 661, 228 P. 695 (1924)). Like Henry, these cases permit condemnation for a private way of necessity only when the water sought to be transported is necessary for the use and enjoyment of the condemnor's land.
*555 In Galbraith we reviewed a decision granting a right of way for an irrigation canal. Galbraith, 59 Wash. at 623, 110 P. 429. Significantly, we found: "These lands, without irrigation, will produce no crops of value and are of little value, but with irrigation will produce large and valuable crops of vegetables, grain, hay, fruits, and other agricultural products." Id. at 625, 110 P. 429. Because the other potential sources of water were impractical and expensive, we allowed condemnation to irrigate the land. Id. at 633-34, 110 P. 429; see also State ex rel. Andersen v. Superior Court, 119 Wash. 406, 408, 205 P. 1051 (1922) (condemnation allowed because water supply is the only one available and without water, the property will be uninhabitable).
Similarly, in White we considered a decision granting condemnation for a right of way for an irrigation ditch. There, two adjacent landowners had riparian rights to a stream flowing by both properties. In order to irrigate his property with this sole source of water the defendant placed a ditch across his neighbor's upland property. Citing Galbraith we noted, "[t]here can be no doubt of the defendants' right to condemn a right of way for irrigation over the plaintiff's lands," White, 72 Wash. at 66, 129 P. 917, because "the defendants alleged necessity for the ditches for irrigation and for rights of way across plaintiff's lands." Id. at 63, 129 P. 917. Condemnation was therefore permitted.
In Gibson several landowners challenged an adjudication of public use and necessity allowing others to acquire by condemnation a right of way for a pipeline to transport water to which they had a state-permitted right. At the outset we stated:
They have acquired the right to take and divert from that point on the creek one cubic foot of water per second; this by permit duly issued to them by the state supervisor of hydraulics. So, their condemnation proceeding here on review is in no sense a seeking to acquire any water rights, but is alone a seeking to acquire the right of way in question.
Gibson, 147 Wash. at 522, 266 P. 198. Even though these landowners held a certified water right, the court did not automatically conclude they were entitled to condemn a right of way for the pipeline. Instead, we examined the necessity of the landowners' use of the water and concluded, "[t]he advantageous use of the water on the lands for domestic purposes clearly appears." Id. at 523, 266 P. 198.[1]
In Kirkendall the court reviewed a grant of condemnation for a right of way to convey water for irrigation purposes. Again, we initially noted the necessity of delivering water to the particular land at issue:
About 40 acres of Wiltz's land is capable of being irrigated by gravity from the waters of the creek, and thus its productiveness be very materially increased, providing he can acquire a right of way for an irrigation ditch over Kirkendall's land from an intake on the creek above Kirkendall's land; otherwise, because of the nature of the creek, very little of Wiltz's land can be effectually irrigated by gravitation from the waters of the creek, and he has no other means of effectually irrigating any substantial portion of his land.

Kirkendall, 130 Wash. at 662, 228 P. 695 (emphasis added). Because of this necessityand despite the fact the landowner did not conclusively have a right to take the necessary waterthe court affirmed the grant of condemnation. Id. at 665-66, 228 P. 695.
Thus, these cases do not stand for the proposition that a private way of necessity for a water pipeline may be condemned simply if the right of way is "necessary" to use and enjoy a particular water right. Rather, Washington precedent clearly holds the water itself must be necessary to the use and *556 enjoyment of one's land before the courts will allow condemnation of a private way of necessity to transport the water. Accordingly, the trial court and the Court of Appeals did not err by considering whether the water to be transported onto the Hallauers' property is necessary to the proper use and enjoyment of their land.
B. Chapter 90.03 RCW
Alternatively, the Hallauers contend they are automatically entitled to access their water right by condemning a private way of necessity so long as they are putting their water to beneficial use. Citing RCW 90.03.040, the Hallauers argue:
When a water right certificate has been issued pursuant to the 1917 water code, this section (RCW 90.03.040) does not require that questions of public welfare and necessity for the water right be reconsidered. Rather, the only prerequisite to condemnation of a pipeline easement under this section, is that it be "found necessary for ... the application of water to any beneficial use."
Supp'l Br. of Pet'rs at 9 (footnote omitted). Washington precedent, however, does not support this argument.
RCW 90.03.040 provides in pertinent part:
The beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire any property or rights now or hereafter existing when found necessary for the storage of water for, or the application of water to, any beneficial use....
As the majority notes, the standards for issuing new water rights are contained in RCW 90.03.290 and require applicants to meet a four-part test. If the Department of Ecology finds (1) there is water available for appropriation, (2) the water is proposed to be utilized for a beneficial use, (3) the appropriation will not impair existing rights, and (4) the appropriation will not be detrimental to the public welfare, then it shall issue a water right permit. The majority takes pains to establish beneficial use is properly characterized as public use for purposes of the eminent domain statute. Majority at 547-549. While the Department may make a determination regarding whether a use is beneficial, it makes no determination regarding whether the use is necessary. The majority ignores that the terms "beneficial" and "necessary" are not synonymous when it concludes RCW 90.03.040 requires no showing of necessity apart from showing condemnation itself is necessary to apply water to a beneficial use.
In Henry, we held Rem.Rev.Stat. § 7354 (RCW 90.03.040) "is in pari materia "with Rem Rev. Stat. § 936.1 (RCW 8.24.010). 155 Wash. at 374, 284 P. 788. Statutes that are in pari materia must be read together as constituting one law. Champion v. Shoreline Sch. Dist. No. 412, 81 Wash.2d 672, 674, 504 P.2d 304 (1972). Thus, RCW 8.24.010 must be read in conjunction with RCW 90.03.040 and the Hallauers must demonstrate the water they seek to convey by private way is necessary for the proper use and enjoyment of their land. The majority summarily dismisses the precedent set by the Henry analysis as "flawed." Majority at 550. Further the majority seeks to draw a distinction between RCW 8.24.010 and RCW 90.03.040 by asserting condemnation under the former requires a showing of necessity to the use and enjoyment of the condemnor's landlocked property while condemnation under the latter is permitted if the water is being put to beneficial use. Majority at 550.
However it is incorrect to distinguish these statutes based on whether the property is landlocked. As previously noted, Henry did not find the landlocked nature of the property to be determinative. Rather the real issue presented by RCW 8.24.010 is whether the dominant estate would be rendered useless absent a condemnation. It makes no sense, and conflicts with case law, to apply RCW 8.24.010 only in cases where the property is landlocked.
Washington precedent defeats the argument RCW 90.03.040 automatically entitles access to a water right so long as the water is being beneficially used.
In Mack v. Eldorado Water Dist., 56 Wash.2d 584, 354 P.2d 917 (1960), two landowners held water right permits issued by the state supervisor of hydraulics, but the appellant sought to obtain the right to maintain *557 a dam and pipeline across the other landowner's property. After considering former RCW 90.04.030, the predecessor of RCW 90.03.040, we explained:
[T]his court has held that the issuance of a water permit by the Supervisor of Hydraulics is not an adjudication of private rights. Thus, the fact that the Supervisor of Hydraulics had issued a permit authorizing appellants to appropriate .11 cubic feet of water per second from the stream in question did not preclude the trial court, in the condemnation action, from determining which of the parties was making a better use of the available water.
Mack, 56 Wash.2d at 587, 354 P.2d 917 (citations omitted). Thus, RCW 90.03.040 does not automatically guarantee an individual the right to condemn private property in order to utilize a state-permitted water right. To the contrary, this determination is left to the judgment of the trial court. Id. at 588, 354 P.2d 917.
The majority asserts today's holding is supported by Crescent Harbor Water Co. v. Lyseng, 51 Wash.App. 337, 753 P.2d 555 (1988). Majority at 549. Not so. In Crescent Harbor a landowner sought a prescriptive easement for access to a well and water system on another's property. The trial court held the landowner was entitled to either a prescriptive or implied easement. On appeal appellant argued the landowner had no right to an easement because he had not alleged compliance with chapter 90.03 RCW and thus had no valid water right in the well. Rejecting this argument the Court of Appeals reasoned:
Lyseng's water rights arguments overlook the differences between a determination of easement and a determination of a claim for water rights. The former, as applied to this case, concerns a well, pipes, pumping apparatus and access thereto. The latter concerns the water that flows within the well and pipes. The two subjects are physically distinct. The two subjects are also legally distinct. An easement is a privilege to use the land of another. It is a private legal interest in another's property. Water rights claims are limited to a determination by the Department of Ecology as to whether a water use permit should be granted and to whom. Water rights claims do not and cannot involve property interest questions, as the Department of Ecology has no authority to adjudicate private rights in land.

Crescent Harbor, 51 Wash.App. at 340, 753 P.2d 555 (citations omitted) (emphasis added). Although Crescent Harbor, did not involve a claim to a private way of necessity, the reasoning is applicable here. If we were to adopt the position advanced by the Hallauers, this court would be abdicating property right determinations to the Department of Ecology. As the Del Rosarios persuasively explain:
The Legislatures could grant the authority to the Department of Ecology to resolve the issues of accessing the water right through someone's property. But the Legislatures have not spoken on that issue. A[s] it remains, the Department of Ecology cannot give away a neighboring property so that a water right may be utilized. Until the Legislatures speak to that issue this Court is left with having to deal with the application of RCW [8.24.010] to determine if access of the water is necessary for the proper use and enjoyment of the claimant's property.
Supp'l Br. of Resp'ts at 12.
Consequently the Hallauers' argument that they are, by virtue of having been issued a water permit by the Department, entitled to condemn a portion of the Del Rosarios's property must fail. The Department has authority to adjudicate water rights but not private property disputes. Crescent Harbor, 51 Wash.App. at 340, 753 P.2d 555. See also Mack, 56 Wash.2d at 587, 354 P.2d 917.
The majority asserts its ruling does not permit the Department to adjudicate private land disputes, majority at 549, but then concludes the issuance of a permit by the Department necessitates a taking of the Del Rosarios's land.
If obtaining a water permit from the Department under RCW 90.03.290 is the only condition an individual must satisfy before he takes the property of another pursuant to *558 RCW 90.03.040, I must conclude, protests of the majority notwithstanding, the Department is either adjudicating private rights in land or at least making a water right adjudication a fait accompli to establish a private right in land. Under the majority's opinion the property rights of all other parties automatically become subservient to the holder of a water permit issued by the Department of Ecology. This I cannot accept.
Accordingly I conclude neither the trial court nor the Court of Appeals erred in holding the Hallauers' state-permitted water right does not grant them an automatic right of condemnation. Because the Hallauers failed to demonstrate the water sought to be transported was necessary for the proper use and enjoyment of their land, this court should affirm the decisions of the trial court and the Court of Appeals, deny condemnation, and grant the Del Rosarios reasonable attorney fees pursuant to RCW 8.24.030. See Sorenson v. Czinger, 70 Wash. App. 270, 279, 852 P.2d 1124 (1993).
For these reasons I respectfully dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] The parties dispute the details of the agreement; however, its terms are not important to resolution of this case.
[2] In addition to Const. art. I, § 16, the constitution also provides that "[t]he use of the waters of this state for irrigation, mining and manufacturing purposes shall be deemed a public use." Const. art. XXI, § 1.
[3] RCW 90.03.040 provides in full:

The beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire any property or rights now or hereafter existing when found necessary for the storage of water for, or the application of water to, any beneficial use, including the right to enlarge existing structures employed for the public purposes mentioned in this chapter and use the same in common with the former owner, and including the right and power to condemn an inferior use of water for a superior use. In condemnation proceedings the court shall determine what use will be for the greatest public benefit, and that use shall be deemed a superior one: PROVIDED, That no property right in water or the use of water shall be acquired hereunder by condemnation for irrigation purposes, which shall deprive any person of such quantity of water as may be reasonably necessary for the irrigation of his land then under irrigation to the full extent of the soil, by the most economical method of artificial irrigation applicable to such land according to the usual methods of artificial irrigation employed in the vicinity where such land is situated. In any case, the court shall determine what is the most economical method of irrigation. Such property or rights shall be acquired in the manner provided by law for the taking of private property for public use by private corporations.
[4] However, even a riparian water right holder might not have sufficient frontage to obtain necessary water. Early statutes allowed for condemnation of rights of ways to obtain water for certain uses. For example, in State ex rel. Galbraith v. Superior Court, 59 Wash. 621, 110 P. 429 (1910), the court addressed statutes permitting condemnation for rights of ways to transport water for irrigation and mining purposes. The statutes expressly granted the right to nonriparian proprietors, and to riparian proprietors lacking sufficient frontage. Id. at 624, 110 P. 429.
[5] Beneficial uses are defined in RCW 90.54.020(1), enacted as part of the Water Resources Act of 1971, chapter 90.54 RCW:

Uses of water for domestic, stock watering, industrial, commercial, agricultural, irrigation, hydroelectric power production, mining, fish and wildlife maintenance and enhancement, recreational, and thermal power production purposes, and preservation of environmental and aesthetic values, and all other uses compatible with the enjoyment of the public waters of the state, are declared to be beneficial.
[6] There is no question in this case that the Hallauers have a certificated water right. To provide for the possibility that there may ultimately be a determination that the party seeking condemnation of a right of way to transport water does not have a water right, or has lost the right through abandonment or statutory forfeiture, the trial court order can provide for reversion of the right of way interest to the landowner under appropriate circumstances. See State ex rel. Kirkendall v. Superior Court, 130 Wash. 661, 665-66, 228 P. 695 (1924).
[7] RCW 8.24.010 provides in full:

An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity or to construct and maintain any drain, flume or ditch, on, across, over or through the land of such other, for agricultural, domestic or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, or for the construction and maintenance of such drain, flume or ditch, as the case may be. The term "private way of necessity," as used in this chapter, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried.
[8] RCW 8.20.070 provides:

At the time and place appointed for hearing said petition, or to which the same may have been adjourned, if the court or judge thereof shall have satisfactory proof that all parties interested in the land, real estate, premises, or other property described in said petition, have been duly served with said notice as above prescribed, and shall be further satisfied by competent proof that the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use, or is for a private use for a private way of necessity, and that the public interest requires the prosecution of such enterprise, or the private use is for a private way of necessity, and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the purposes of such enterprise, the court or judge thereof may make an order, to be recorded in the minutes of said court, directing that a jury be summoned, or called, in the manner provided by law, to ascertain the compensation which shall be made for the land, real estate, premises or other property sought to be appropriated, unless a jury be waived as in other civil cases in courts of record, in the manner prescribed by law.
[9] The codification of the statute has changed, although its wording has remained unchanged since the date of enactment.
[10] There is also no question of the validity of RCW 90.03.040. First, it is a statute of the type approved by the United States Supreme Court in Clark v. Nash, 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085 (1905). Second, the court has held that the statute is a valid exercise of legislative power. State ex rel. Gibson v. Superior Court, 147 Wash. 520, 523, 266 P. 198 (1928).
[11] Because chapter 8.24 RCW does not apply in this case, our comments do not have any bearing on when attorney fees might be awarded under RCW 8.24.030. Following remand and further proceedings, the Del Rosarios may be entitled to attorney fees under chapter 8.25 RCW. The provisions of that chapter obviously cannot be applied at this stage of proceedings.
[1] With regard to necessity, we observed:

Burrowes' land has no fresh water upon it, and is almost surrounded by salt water. DeZemed's land has no fresh water upon it, other than a spring furnishing a quantity of fresh water so limited as to be insufficient for any practical purpose. The portion of the creek flowing the short distance across his land does not furnish him any fresh water supply thereon, by reason of the salt water tide coming into it there.
Gibson, 147 Wash. at 521, 266 P. 198.