# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of | ) | No. 79767-1-I |
| | ) | |
| NINA JONES, Petitioner and/or Parent on behalf of: | ) | |
| | ) | |
| E.R., dob: 03/28/2010, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| A.M., dob: 12/01/2010 | ) | |
| L.M., dob: 11/06/2012, | ) | PUBLISHED OPINION |
| | ) | |
| Respondents. | ) | |
| | ) | |

MANN, C.J. — Attorney Patrick Songy appeals a trial court order granting CR 11 sanctions against him. The court sanctioned Songy after he sought a sexual assault protection order (SAPO) against two children on behalf of his client, Nina Jones. Songy contends that he made a reasonable argument when seeking the orders and that the court abused its discretion when it granted sanctions against him. Because children under eight years old cannot form the capacity to commit a sexual assault their actions cannot serve as the basis for a SAPO. Because the trial court did not abuse its discretion in granting CR 11 sanctions, we affirm.

I.

Nina Jones and Anthony Reynolds are the parents of E.R. and L.R. Jones and Reynolds separated in June 2017. In August 2017, Reynolds moved in with his girlfriend, Megan McGowan, and her two children, L.M. and A.M. Jones and McCowan had a contentious relationship; at one point Jones sought an anti-harassment order against McCowan, which was denied.

On February 5, 2019, Jones's attorney, Songy, filed a petition for a temporary SAPO against McCowan, L.M., and A.M., to restrict contract between the McCowan children and E.R. At the time, L.M. was six years old and A.M. eight years old. Jones's children, E.R. and L.R. were eight years old and three years old, respectively. The temporary SAPO petition was supported by a declaration from Jones. Jones described two incidents involving the children. Jones characterized L.M. as the aggressor in the first incident, when he inappropriately placed his mouth on parts of E.R.'s body under A.M.'s[1] direction.[2] Jones stated that she and E.R.'s therapist contacted Child Protective Services (CPS) to report the first incident. CPS worker Lauren Safadago investigated the McCowan-Reynolds home. Jones reported that Safadago contacted Reynolds and asked him to implement precautions to prevent further incidents, including locks on the children's doors.

---

[1] A.M. was seven years old at the time of this incident.
[2] For respect for the minors involved, we will not describe the alleged incidents in detail as the factual basis for the SAPOs is unnecessary for our analysis.

Jones also stated that Safadago contacted her concerning a second incident that had been reported by L.M.'s grandfather. Jones described the second incident as L.M. forcefully touching parts of E.R.'s body during one of E.R.'s overnight visits.[3]

McCowan and Reynolds provided a different version of the events that transpired between the children, and asserted that Jones mischaracterized the events. McCowan and Reynolds described the first incident as a game of truth or dare that became inappropriate, but did not arise to a sexual assault. Reynolds informed Jones of the incident, and a week later, Jones notified Reynolds that E.R.'s therapist was reporting the incident to CPS. McCowan stated that Jones then began threatening Reynolds with a protection order. McCowan and Reynolds stated the second incident was inappropriate behavior that both E.R. and L.M. willingly participated in. Reynolds and McCowan reprimanded the children for their behavior. Reynolds said that although he considered these behaviors concerning, he thought they were within the realm of childhood development and did not constitute a sexual assault.

 McCowan confirmed that she was also contacted by Safadago to report the second incident. According to McCowan, Safadago told her that Jones had misquoted her in her declaration. Safadago did not provide great detail as to the misrepresentations and Safadago declined to provide a written statement. CPS investigated both incidents as negligent treatment or maltreatment by McCowan. CPS found both allegations unfounded.

On February 5, 2019, a superior court commissioner issued a temporary SAPO against A.M., L.M., and McCowan. On February 6, 2019, Songy notified McCowan

---

[3] A.M. was eight years old during the second incident, but she was not alleged to have any involvement in the second incident.

about the temporary SAPO and told them that Jones would be seeking a modification to the parenting plan. Songy explained that if Jones received "adequate safeguards" through the parenting plan, then Jones would dismiss the temporary SAPO.

Two days later, on February 7, 2019, Songy obtained a temporary modification of the parenting plan ex-parte that restricted contact between E.R. and the McCowan children through a restraining order.[4] Songy notified the McCowans about the parenting plan modification on February 8, 2019.

On February 15, 2019, an attorney for the McCowans petitioned the superior court for a writ of review, arguing that the SAPO order should be voided and dismissed with prejudice as inappropriate against a six-year-old and eight-year-old child as they are legally incapable of committing nonconsensual sexual conduct. That same day, Jones petitioned the court to appoint a Guardian Ad Litem (GAL) for both E.R. and the McCowan children.

While Songy was in communications with the McCowans' lawyer about the parenting plan modification, he stated that:

> I do not want to pursue full SAPOs against these children unless I absolutely have to. You and your client have probably both wondered why litigation is pending here, instead of just in the family law case. The reason is straightforward: there is one thing the Court can do here that it cannot do in the family law matter—appoint a GAL for the two McCowan children.

Reynolds' lawyer confirmed this communication, stating that on February 15, 2019:

> Songy told me that filing a SAPO against such young children is his 'nuclear option,' he did not like doing it, but he had no other way to obtain jurisdiction over these children. Mr. Songy further told me his plans to dismiss the SAPOs after he obtains the desired parenting plan modification for his client, as that is his ultimate goal.

---

[4] Although a copy of the restraining order or parenting plan modification is not included in the clerk's papers, the parties agree that the modification set limits between E.R. and the McCowan children.

On February 19, 2019, the parties appeared before Snohomish County Superior Court Judge Bruce Weiss to seek a continuance. While the court granted the continuance until March 5, 2019, Judge Weiss noted:

> Let's assume whoever hears this enters the order. How does it get enforced? I mean, it seems to me, honestly, that this case really should be handled through the dissolution action as opposed to this type of procedure, because, as far as I can tell there's absolutely no remedy for certain against the six-year-old.
>
> I guess the eight-year-old maybe there's a remote, remote, remote possibility. But it seems to me to be a superfluous act to enter - - I'm not saying I won't enter these orders now so the action can be taken in the family law matter, but it seems to me a superfluous act to enter the orders.

Songy agreed with the court that there were better ways to address the issue, but reiterated that his purpose in filing the SAPO was to appoint a GAL to evaluate the McCowan children. Songy did not inform the court that he had obtained restrictions between E.R. and the McCowan children through the temporary parenting plan modification action.

On February 19, 2019, Songy filed a memorandum of law in response to the McCowans' petition for writ of review. Songy argued that the criminal code did not apply to the SAPO proceedings, and therefore the court did have jurisdiction over the McCowan children.

After Songy petitioned for issuance of full SAPO, on February 28, 2019, McCowan moved to dismiss the temporary SAPO, to deny the request to issue a full SAPO, and for CR 11 sanctions against Songy. McCowan repeated her argument that children under eight may not be restrained by a SAPO because children under eight lack the capacity to commit a crime.

On March 5, 2019, Snohomish County Superior Court Judge Joseph Wilson denied the petition for the full SAPO, finding it invalid. The court dismissed the petition with prejudice. The court also granted McCowan's motion for CR 11 sanctions, ordering Songy to pay $15,000 in attorney's fees. The court found that L.M. and A.M. were incapable of forming intent under RCW 9A.04.050 because they were under eight at the time the incidents occurred. The court found that the SAPO petitions:

> lacked a factual and legal basis to be filed and caused irreparable harm to the minor respondents including but not limited to having their names associated with sexual assault within the justice system, incurring significant legal fees to defend themselves, the emotional toll it has taken on them and their respective families etc.

The court further found that Songy admitted that he used the SAPOs as a discovery tool for the family law case and to find out information about L.M. and A.M. by appointing a GAL and that Songy did not use the available remedies, instead, he chose to use the SAPO to gain an advantage in the family law case. The court explained:

> The use of this SAPO proceeding is offensive to this court and to the administration of justice. Children who cannot be held legally liable have been used to further an agenda of the Petitioner to gain some advantage in her family law case. Again, a simple request for an immediate restraining order in the family law case requesting no contact between E.R. and the respondents based on the alleged behavior could and should have been sought.

The court further found that Songy was aware of the respondent's legal argument as soon as February 15, 2019, when he received a copy of the writ for review, but he chose to continue pursuing "baseless" litigation. In regards to the fees, the court determined that the minor respondents should not have to pay to defend themselves,

and that sanctions against Songy were appropriate. The trial court entered its written findings on March 21, 2019.[5]

Songy appeals.

## II.

Songy argues that the superior court abused its discretion in ordering CR 11 sanctions. This is so, he contends, because the court based its decision on an erroneous interpretation of law: that the SAPO statute is inapplicable to children under eight years old. We disagree.

We review the imposition of CR 11 sanctions for an abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). We determine if the decision to impose sanctions is manifestly unreasonable or exercised on untenable grounds. Nelson v. Duvall, 197 Wn. App. 441, 451, 387 P.3d 1158 (2017). CR 11 sanctions are used to deter baseless filings and to curb abuses of the judicial system. Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).

Complaints are not baseless if they are "grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Bryant, 119 Wn.2d at 219-20. A complaint must lack a factual or legal basis before it can become the proper subject of CR 11 sanctions. Bryant, 119 Wn.2d at 220. "If a complaint lacks a factual or legal basis, the court cannot impose CR 11 sanctions unless it also finds that the attorney who signed and filed the complaint

---

[5] The record includes a declaration from Lisa Micheli, an attorney experienced in family law, and a brief filed by Sexual Violence Legal Services (SVLS), a legal aid organization that supports sexual assault survivors. Both supported Songy.

failed to conduct a reasonable inquiry into the factual and legal basis of the claim." Bryant, 119 Wn.2d at 220.

In 2006, the Washington State Legislature created the Sexual Assault Protection Order Act (SAPOA), chapter 7.90 RCW, with the intent of creating a civil remedy allowing a victim of sexual assault to obtain a protection order against future contact with the assailant. RCW 7.90.005. When creating the SAPOA, the legislature declared:

> Sexual assault is the most heinous crime against another person short of murder. Sexual assault inflicts humiliation, degradation, and terror on victims. According to the FBI, a woman is raped every six minutes in the United States. Rape is recognized as the most underreported crime; estimates suggest that only one in seven rapes is reported to authorities. Victims who do not report the crime still desire safety and protection from future interactions with the offender. Some cases in which the rape is reported are not prosecuted. In these situations, the victim should be able to seek a civil remedy requiring that the offender stay away from the victim. It is the intent of the legislature that the sexual assault protection order created by this chapter be a remedy for victims who do not qualify for a domestic violence order of protection.

RCW 7.90.005. The legislature's declaration demonstrates that it intended the SAPOA to provide a broad civil remedy to protect victims of sexual assault when there are no protections available from a criminal case.

"Because SAPOA is focused on sexual assault and rape, its terms should be read in harmony with the "sex offenses" chapter of the Washington criminal code, chapter 9A.44 RCW." Nelson, 197 Wn. App. at 454 (citing Hallauer v. Spectrum Properties, Inc., 143 Wn.2d 126, 146, 18 P.3d 540 (2001)) (where statutes relate to the same subject matter they must be construed together). The legislative declaration clearly demonstrates that the legislature considered chapter 9A.44 RCW when enacting SAPOA. See Nelson, 197 Wn. App. at 454.

8

Songy first argues that SAPOA does not state a minimum age or otherwise exclude anyone by age. Songy is correct RCW 7.90.030(1) allows for the filing of a SAPO on behalf of a minor child. Songy is also correct that under RCW 7.90.090(1)(b), a petitioner may not be denied a SAPO "because the petitioner or respondent is a minor." But the provisions of SAPOA must be read in conjunction with the criminal code. Nelson, 197 Wn. App. at 454. As a matter of law, "children under age eight years are incapable of committing crime." RCW 9A.04.050. "Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong." RCW 9A.04.050.

Read together, a minor, as used in SAPOA, does not mean any child under the age of twelve. When reading SAPOA in conjunction with the criminal code, neither a temporary nor a permanent SAPO is applicable to children under age eight. Children under age eight simply do not have the capacity to commit a sexual assault to serve as the basis for a SAPO. A temporary SAPO is still unavailable for a child under age twelve because the child is still presumed incapable of committing crime at that age. For children between eight and 12 years only, a permanent SAPO may be available, but only after a hearing in which the presumption of incapacity is removed. RCW 9A.04.050.

Here, while A.M. turned eight before the second incident, A.M. was not alleged to have been involved in the second incident. At the time of the first incident, A.M. was seven years old. Because the McCowan children were under age eight years old at the time of the relevant incidents, neither a temporary nor a full SAPO was available as

9

relief. While Songy relied on RCW 7.90.030(1)(b)(i) as support for the petitions, he was notified no later than February 15, 2019, that the law was not applicable. Even with this knowledge, Songy maintained the temporary orders, and sought permanent orders.

Songy also argues that RCW 7.90.090(4) provides for the implication of SAPOs against children in elementary school:

> In cases where the petitioner and the respondent are under the age of eighteen and attend the same public or private elementary, middle, or high school, the court, when issuing a protection order and providing relief, shall consider, among the other facts of the case, the severity of the act, any continuing physical danger or emotional distress to the petitioner, and the expense difficulty, and educational disruption that would be caused by a transfer of the respondent to another school. The court may order that the person restrained in the order not attend the public or approved private elementary, middle, or high school attended by the person under the age of eighteen protected by the order.

RCW 7.90.090(4). Although this language does provide for relief for an elementary school child, this does not mean that Songy reasonably filed the SAPOs. Children are commonly between the ages of five to twelve in elementary school. The statute does recognize that a SAPO is available to a child in elementary school, however, consistent with the legislative intent, the SAPO is still inapplicable to a child under eight. We read the statute within the context of the criminal code, and this reading is consistent with the intent of the statute.

Songy next argues that the legislature's defined list of "sexual conduct" demonstrates that the statute contemplates that the perpetrator may be a minor. Songy relies on the definition: "sexual conduct" described as "any coerced or forced touching or fondling by a child under the age of thirteen, directly or indirectly, including through clothing, of the genitals, anus, or breasts of the respondent or others." RCW 7.90.010(4)(f). Songy's reliance on this language is a mischaracterization of the

definition of sexual conduct.  This language provides relief for when the <u>respondent</u> is forcing or coercing a child under thirteen to touch the respondent or another party.  It does not describe a perpetrator under thirteen as Songy asserts.

Counsel for the McCowan children notified Songy as early as February 15, 2019, that SAPOA is simply not applicable to children as young as A.M. and L.M.  Judge Weiss noted the same concern shortly after.  Songy did not make a reasonable argument that justified his filing of the SAPOs against the McCowan children.  If Songy had conducted a reasonable investigation into this case, he would have determined that SAPOs are inapplicable to children under the age of eight, and that the remedies he sought for E.R. could have been obtained through the pending family law action.  The trial court did not abuse its discretion in ordering CR 11 sanctions against Songy.

III.

Respondents argue that they are entitled to their attorney fees on appeal.  We agree.  Attorney fees may be awarded only when authorized by a contract provision, a statute, or a recognized ground in equity.  <u>King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV</u>, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017).  "If a statute authorizes attorney fees in the trial court, we have the inherent jurisdiction to make such an award on appeal."  <u>Ur-Rahman v. Changchun Dev., Ltd.</u>, 84 Wn. App. 569, 576, 928 P.2d 1149 (1997).

The trial court found that it was unfair for the children to have to pay for an attorney to defend themselves when the SAPO did not apply to children their age.  We conclude that it would be also unfair to make the children pay to defend themselves on

11

appeal. Subject to compliance with RAP 18.1, we award respondents their attorney fees on appeal.

     Affirmed.

Mann, C.J.

WE CONCUR: